**UNITED STATES of America**

v.

**Francis G. ROMANELLO et al.**

**Crim. No. H–203.**

United States District Court,
D. Connecticut.

May 6, 1975.

Paul E. Coffey, Sp. Atty., Dept. of Justice, Hartford, Conn., for plaintiff.

Joseph J. Rinaldi, Stamford, Conn., Charles Hanken, Bridgeport, Conn., Lawrence A. Christiano, Stamford, Conn., Jacob D. Zeldes, Bridgeport, Conn., Cary L. Fleisher, Stamford, Conn., Thomas D. Clifford, Federal Public Defender, New Haven, Conn., for defendants.

## MEMORANDUM OF DECISION ON MOTIONS TO DISMISS THE INDICTMENT AND WITHDRAW PLEAS

NEWMAN, District Judge.

The fall-out from the Supreme Court's decisions in *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), and *United States v. Chavez,* 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974), has now reached this Court, creating a situation that is, if not radioactive, at least complicated. This case began with an indictment charging 18 defendants with violations of 18 U.S.C. §§ 371 and 1955. Upon the Government's motion, charges were dismissed against Peter Palkimas, Zapherson, Pagliaro, and Pugliesi. Paul Palkimas pled *nolo contendere* to Count 1, and all of the other defendants pled guilty to Count 1. Count 1 charged a violation of § 1955. The pleas of these 14 defendants were entered upon a reservation of the right to challenge on appeal the lawfulness of the two wiretaps on which the Government's case was virtually entirely based. The convictions of these 14 defendants were affirmed on May 25, 1973. *United States v.*

*Romanello,* 478 F.2d 1397 (2d Cir. 1973). Certiorari was sought, and after the Supreme Court's decision in *Giordano,* the Supreme Court granted certiorari, vacated the judgment of the Court of Appeals and remanded for further consideration in light of *Giordano.* 417 U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209 (1974).

Thereafter the Court of Appeals entered three orders. On June 26, 1974, it ordered its prior judgment of May 25, 1973 vacated. On August 6, 1974, it ordered that as to seven defendants, Levin, Simons, Somma, Christiano, Milici, Walter Sabella, and Gloria Sabella, the judgments of this Court be reversed and the indictments dismissed; it further ordered that as to six defendants, Romanello, Letizia, Ferro, Paul Palkimas, Pascale, and Favano, the judgments of this Court be affirmed. Finally, on October 21, 1974, upon a petition for rehearing filed by the six last-named defendants, the Court of Appeals granted the petition for rehearing, vacated its "previous judgment," and ordered that the "actions" of these six defendants be remanded to this Court for "further proceedings consistent with" *Giordano* and *Chavez.*

The different treatment of the two groups of defendants derived from the fact that the case against the seven defendants whose indictments were ordered dismissed rested solely on a wiretap conceded by the Government to be invalid under *Giordano,* whereas the case against the six defendants whose "actions" were remanded rests, as contended by the Government, on an earlier wiretap valid under *Chavez* and a subsequent wiretap invalid under *Giordano.*

Following the October 21, 1974, remand, this Court heard oral argument by the parties on February 3, 1975, and entered an order on February 4, 1975, setting February 14, 1975, as the date for the six defendants to file whatever motions they cared to submit to attack the original judgments of conviction entered by this Court. As far as this Court can determine, those judgments of conviction remain in effect. They were originally affirmed by the Court of Appeals. Thereafter, the Court of Appeals vacated

its order of affirmance and remanded the "actions" of these six defendants. But no order of the Court of Appeals has ever reversed or vacated the judgments of conviction entered by this Court. The convictions having been appealed, there has now been a remand to this Court for further proceedings. Those further proceedings consist of the opportunity for the six defendants to file motions attacking the judgments of conviction.

All six defendants have moved to dismiss the indictment primarily on the ground that the second of the two wiretaps has been adjudicated to be invalid under *Giordano.* They contend that the presentation to the grand jury of any evidence obtained from an unlawful wiretap constitutes a violation of the Fourth Amendment and of 18 U.S.C. § 2515, and that the consequence of such constitutional and statutory violations must be dismissal of the indictment. Preliminarily it may be observed that if the defendants' position is correct, it is difficult to understand why both the Supreme Court and then the Court of Appeals remanded their cases for further proceedings, since, according to their argument, the indictment should be dismissed simply because one of the two wiretaps was unlawful. But that unlawfulness was fully apparent to the Court of Appeals when it ordered the indictment dismissed as to the seven defendants who were indicted solely on the basis of the invalid wiretap. The remand to this Court must have been intended to require consideration of something other than whether the second wiretap was unlawful.

■ The issue apparently to be decided is whether the invalidity of one of two wiretaps that produced evidence considered by a grand jury requires or permits dismissal of an indictment. This Court is persuaded that the Supreme Court has stated in both *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), and *Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), that a grand jury's receipt of evidence obtained from an unlawful wiretap does not require dismissal of the indictment, at least when such evi-

dence was not the only evidence before the grand jury.

■ Defendants suggest this conclusion is rendered in some doubt by observations in footnote 4 of the opinion in *Goldberg v. United States*, 472 F.2d 513, 516 (2d Cir. 1973). The Court of Appeals in that opinion intimated strong doubts as to whether a grand jury that heard a witness's testimony compelled under a grant of use immunity could then validly indict that witness. The footnote indicated that an indictment might be subject to dismissal if a defendant could establish "that it was obtained on the basis of testimony compelled from him after a proper assertion of his privilege." *Ibid.* We have recently been reminded of the sound advice to read language of appellate opinions "in the light of the facts of the case under discussion," *Armour & Co. v. Wantock*, 323 U.S. 126, 132, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944), quoted in *Communications Workers of America, AFL–CIO v. American Telephone and Telegraph Co.*, 513 F.2d 1024 (2d Cir. 1975). For a grand jury to indict an immunized witness whose compelled testimony it has heard would raise serious problems affecting the constitutional principles of *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). To permit an indictment to stand though the grand jury has heard, among other evidence, the results of an unlawful wiretap, is precisely what the Supreme Court indicated was proper in *Gelbard*, 408 U.S. at 60, 92 S.Ct. 2357. Though the procedural issue in *Gelbard* did not involve dismissal of an indictment, the case did involve a grand jury's consideration of evidence from an unlawful wiretap. Thus, the Court's dictum concerning the validity of indictments despite the presence of unlawfully obtained evidence cannot be disregarded.

■ Though this Court may well have discretion to dismiss the indictment, see *United States v. Tane*, 329 F.2d 848, 853–54 (2d Cir. 1964), this is not an appropriate case for the favorable exercise of such discretion. Examination of the grand jury testimony of F.B.I. Agent Robert Shortelle, which has been disclosed to the defendants, indicates clearly that the six defendants now before the Court were implicated primarily by the results of the first wiretap, the one adjudicated to be valid under *Chavez*. The agent reported to the grand jury that his investigation concerned two operations, which he characterized as the "Romanello operation" and the "Letizia operation." He explained that the first wiretap concerned the Romanello operation, and that as a result of the information learned from this wiretap, a second wiretap was conducted concerning the Letizia operation. He also plainly identified the six defendants now before the Court as the personnel of the Romanello operation.[1] The evidence against these six defendants was thus accumulated before the second wiretap ever occurred. It would not be an appropriate exercise of discretion to dismiss the indictment against these six defendants because a later unlawful wiretap implicated other defendants who have already had the indictment dismissed as to them.

■ Defendant Paul Palkimas makes one further attack on the indictment, based on *United States v. Estepa*, 471 F.2d 1132 (2d Cir. 1972). Whether such an attack survives the entry of Palkimas's plea of *nolo contendere* is seriously to be doubted, but in any event the claim lacks merit. Agent Shortelle at no time sought to mislead the grand jury into thinking it was getting testimony of a quality different from what it actually received. Shortelle informed the grand jury that his testimony was based in part on the conversations heard during the wiretapping of the Romanello operation. Whether he actually heard the participants or simply read the transcriptions of their

---

1. While Letizia is one of these six defendants, Shortelle's grand jury testimony makes clear that he was one of the members of the Romanello operation and implicated as such by virtue of the first wiretap. The second wiretap concerned a separate group of defendants who engaged in the wagering business with Letizia; hence their designation as the "Letizia operation."

conversations is of no consequence. He reported to the grand jury the results of the wiretapped conversations, together with an analysis of toll call records. The grand jury fully understood that it was from these sources that Shortelle could report that "Romanello has laid off numbers to Paul Palkimas." (Grand Jury Tr. 20).

In addition to their attack upon the indictment, five of the six defendants have moved to withdraw their pleas of guilty. Defendant Paul Palkimas, pursuing a slightly different tactic, has moved for additional time to take further action, specifically two weeks from the date he received the court reporter's transcription of the proceedings at which he entered his plea of *nolo contendere.* Though the Government has not opposed this motion for additional time, there is no reason to grant it. This Court set a firm schedule for filing all motions to which defendants thought they were entitled. It did not authorize piecemeal motion practice in a case now more than three years old. If Palkimas thought he was entitled to withdraw his plea, he could have promptly so moved within the time set by this Court and then secured the transcript before his motion was decided. In any event, the court reporter's transcript of Palkimas's plea proceeding was filed on March 12, 1975, and though far more than two weeks have since elapsed, no motion to withdraw the plea has been submitted.

The grounds of the motions to withdraw the guilty pleas filed by the five defendants other than Palkimas are not entirely clear. Their identical motions recite the pertinent prior proceedings and then allege the following:

" . . . petitioner's plea with reservation was entered with both taps in mind since both taps were necessary to prove the essential elements of 18 U.S.C. Sec. 1955 which was the substantive count to which defendant entered his plea."

Apparently the claim is that the invalidity of the second wiretap precludes or at least casts doubt on the Government's ability to prove defendants' guilt on the count to which they pled guilty. In the Govern-

ment's view, defendants are simply trying to litigate the sufficiency of the evidence against them. Though defendants have not elaborated the grounds of their motions with any briefs, it may be that they are also claiming that without the results of the second wiretap, the Government cannot satisfy the requirements of Fed.R.Crim.P. 11 that "The Court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

As indicated above, the guilty pleas were entered with a reservation of the right to challenge the lawfulness of the two wiretaps. While entry of a guilty plea with a reservation concerning appeal of specified issues is a procedure approved in this Circuit, see *United States v. Doyle,* 348 F.2d 715 (2d Cir. 1965), and acted upon by the Court of Appeals in this case, it would seem evident that such a procedure is a departure from the normal preclusive effect of a plea of guilty, and any reservation of issues available on appeal should be strictly construed. The procedure is designed to enable the defendant to appeal the issue he has elected to reserve, not to precipitate further litigation about the scope of his reservation. Courts are entitled to have defendants who pursue this course specify the issues reserved with precision.

I have reviewed the transcripts of the proceedings at which each of the six defendants now before the Court entered his plea. At none of these proceedings was any mention made of the situation where one wiretap would be found invalid and the other wiretap found valid. This prospect simply did not occur to any of the defendants, and they reserved no right to relief based on such an eventuality. To give them an automatic right to withdraw their pleas because one of two wiretaps has been found invalid would enlarge their reservation of rights beyond what they specified. From the testimony of Agent Shortelle before the grand jury, it is apparent that the valid wiretap produced substantial evidence against these six defendants, who were all identified as members of the Romanello op-

eration. By their pleas, they gave up the right to challenge the sufficiency of that evidence. Nor are they entitled to a second chance to decide whether or not to stand trial, now that they know the Government will not have available to it the additional evidence derived from the second wiretap. That type of arrangement was not spelled out when the pleas were entered. Moreover, had the defendants sought to enter pleas on that basis, it is not likely this Court would have acceded to such an arrangement. At a minimum, the Court would have called upon the Government to categorize its evidence against the defendants with reference to the two different wiretaps so that an informed decision could have been made as to the appropriateness of permitting pleas to be entered on such a second-chance basis.

Of slightly more concern is the issue of what bearing the invalidity of the second wiretap may have upon compliance with Rule 11. When called upon to specify the facts the Government would prove at trial, the Government attorney, at each of the plea proceedings, discussed the evidence derived from both wiretaps, without making any distinction between them. The attorney then stated the general outlines of the gambling activities of the defendants and specified that the statutory requirements of a business involving more than five participants and doing more than $2,000 business in a single day and continuing for more than thirty days were met. The Government now indicates that the thirty-day continuous operation cannot be shown without the second wiretap. It relies, however, on the alternative criterion of § 1955 that there be more than $2,000 of gross revenue in a single day. The difficulty is that at the plea proceedings involving these six defendants, the days on which more than $2,000 of revenue was realized were not specified, making it unclear from the plea proceedings whether that statutory requirement was met as to these defendants from the first wiretap alone.

 The Government now asserts in its papers that in fact $2,724 of revenue was realized on December 6, 1970. The somewhat novel question presented is whether the Court can accept this representation to satisfy the requirement of Rule 11.

In *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the Supreme Court held that a conviction based on a guilty plea obtained in violation of the requirements of Rule 11 must be set aside. The Court was there concerned with those requirements of the Rule that are designed to assure that the plea is voluntary. The Court preferred a strict adherence to those requirements in preference to an after-the-fact inquiry as to voluntariness, in view of the disadvantageous position encountered by a defendant who seeks to contest voluntariness.

It seems to me that Rule 11's final requirement concerning a factual basis for the plea stands on quite a different footing. This requirement does not affect the voluntariness of the plea. It is designed to assure that after the Court has received a plea determined to be voluntary, it does not enter judgment upon that plea until satisfied that a factual basis for the plea exists. It protects against false pleas, not involuntary ones. I can see no reason why, at least in the circumstances of this case, the Court's obligation to be satisfied of the factual basis of the plea cannot be perfected long after the plea has been entered. At the time of the pleas, the Court was entirely satisfied that a factual basis existed. So were the defendants and their counsel. It simply was not pertinent to any issue then before this Court to know on which particular date more than $2,000 of revenue was realized. The invalidation of the second wiretap makes such specification of dates pertinent now. The Court therefore now has an obligation to become satisfied that there is a more precise factual basis for the pleas. The Government's representation, unchallenged by the defendants, that more than $2,000 of revenue was realized on December 6, 1970, is sufficient. It is apparent that this information was derived from the first tap, and not from the second tap, which was not begun until June, 1971.

Moreover, the grand jury testimony of Agent Shortelle provides the Court with ample basis to be satisfied that there is a factual basis for all of the elements of a violation of § 1955 by these six defendants.

Accordingly, the motions of defendants Romanello, Letizia, Ferro, Paul Palkimas, Pascale, and Favano to dismiss the indictment are denied; the motion of defendant Paul Palkimas for time to file additional motions is denied;[2] the motions of defendants Romanello, Letizia, Ferro, Pascale, and Favano to withdraw their pleas of guilty are denied. The sentences previously imposed will become effective at 10:00 a. m., May 13, 1975.

[2]. At oral argument, defendant Paul Palkimas advanced one additional contention that has not been elaborated in any papers. He contends that in the Court of Appeals a stipulation was entered into to the effect that his case would be governed by the disposition of the cases of defendants Favano and Levin. That stipulation is not before this Court. In any event, it cannot provide Palkimas with any relief at this point. Since the Court of Appeals made different dispositions of the cases of Favano and Levin, and remanded to this Court the case involving Paul Palkimas, it obviously did not think the stipulation required that Palkimas's case be disposed of by dismissal of the indictment, as occurred with Levin, rather than by remand, as occurred with Favano. It is simply impossible to give the stipulation literal effect. As a result of this Court's rulings, Paul Palkimas's case is being disposed of in the same fashion as Favano's.