STATE of Iowa, Appellee,

v.

Donald Eugene FLUHR, Appellant.

No. 62749.

Supreme Court of Iowa.

Jan. 23, 1980.

Paul T. Shinkle of Ackerman & Shinkle, Cedar Falls, for appellant.

Thomas J. Miller, Atty. Gen., Lona J. Hansen, Asst. Atty. Gen., David Correll, Black Hawk County Atty., and Jay Nardini, Asst. Black Hawk County Atty., for appellee.

ALLBEE, Justice.

The proper procedure for acceptance of guilty pleas has in the past been the subject of much debate. *See, e. g., Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) (3–4–2 decision); *State v. Reaves,* 254 N.W.2d 488 (1977) (4–1–4 decision). Our legislature recently removed some of the uncertainties in this area by enacting Iowa R.Crim.P. 8(2). It is the application of this rule to a determination of the adequacy of defendant Fluhr's guilty plea to which we now turn.

The proceedings with which we are primarily concerned took place on October 2, 1978, at the Black Hawk County Court-house. The following is a complete transcript of those brief proceedings:

THE COURT: For the record, the State on this date has filed an Amended Information reducing the charge in this case from a felony, Class C Felony, to an aggravated misdemeanor, and I've been handed by Mr. Long an executed written plea of guilty, and on the record, are you prepared to withdraw the former plea and also waive any formalities of arraignment on the Amended Information?

MR. LONG: Yes, Your Honor, we would. We would withdraw our former plea of not guilty and to the Amended Trial Information the Defendant is here today to enter a plea of guilty.

We could waive formal arraignment, waive time to plead, and state that the Defendant is charged in his true and correct name, and that he is nineteen, I believe—nineteen years old.

THE COURT: Mr. Fluhr, would you stand, please?

I see from this written plea that you completed the Tenth Grade. I assume that you're able to read the English language all right, is that right?

THE DEFENDANT: Uh-huh.

THE COURT: Did you and Mr. Long go through this entire plea form?

THE DEFENDANT: Yes, sir.

THE COURT: Do you think you understood what your rights are—

THE DEFENDANT: Yes, sir.

THE COURT: —as far as trial goes and so on, if you plead not guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any questions about anything on this form?

THE DEFENDANT: No.

THE COURT: Well, being familiar with it and knowing what your rights are and understanding that if you plead guilty, you give up those rights, I'd ask you on the record here in open court what is your plea; guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: That is to the amended charge of Theft in the Third Degree, an aggravated misdemeanor, is that right?

THE DEFENDANT: Yeah.

THE COURT: This consisted of taking parts off of a car that belonged to a man named Thompson,[1] is that right?

THE DEFENDANT: Yes.

THE COURT: Aside from the reduction of the charge, has there been any other plea bargaining in this case?

MR. NARDINI: No, Your Honor.

MR. LONG: Just the reduction in charge.

THE COURT: So you understand that the matter of sentencing will be up to a Judge later on after a pre-sentence investigation?

THE DEFENDANT: Yes, sir.

THE COURT: Just one or two other questions. There's been no other plea bargain or promise by the State other than what they have already done. That is, to reduce the charge. Did anyone threaten you in any way to force you into court today?

THE DEFENDANT: No, Your Honor.

THE COURT: Have you had anything by way of—today—either alcohol or drugs that makes it difficult to understand what we're doing?

THE DEFENDANT: No, Your Honor.

THE COURT: All right. Well, on the basis of the executed written plea and the Defendant's affirmation of that here in open court, I will accept the plea and Order a presentence investigation and could you have the Defendant report to Pre-Trial Services to set up an appointment?

MR. LONG: Certainly. Certainly. Thank you.

(Proceedings concluded.)

On November 3, 1978, defendant was given a two-year imprisonment sentence, but was placed on probation with the provision that he stay in a residential facility. Defendant subsequently filed an appeal from his conviction by plea of guilty.

I. At the outset, we note that because the alleged crime occurred on June 19, 1978, this case is governed by Iowa R.Crim.P. 23(3)(b), § 813.2, Supplement to the Code 1977 (amended by Iowa R.Crim.P. 23(3)(a), (b), § 813.2, The Code 1979). *See* § 801.5(1), The Code 1979. That rule permits a defendant to directly appeal his conviction based on a guilty plea, escaping the requirement of both *State v. Reaves,* 254 N.W.2d 488, 493 (Iowa 1977), and the amended rule that procedural challenges to guilty pleas be initially raised by a motion in arrest of judgment. *State v. Kempf,* 282 N.W.2d 704, 706 (Iowa 1979); *State v. Gardner,* 274 N.W.2d 328, 329 (Iowa 1979). *See also State v. Spence,* 282 N.W.2d 131, 132 (Iowa 1979).

The other procedural requirement for preservation of error set forth in *Reaves,* that the defendant claim to have been unaware and not advised of the claimed omission from the guilty plea proceedings, is supplanted by the detailed procedural guidelines set forth in rules 8(2)(b) and 23. *See Manley v. State,* 278 N.W.2d 1, 4 (Iowa 1979) (McCormick, J., concurring specially). *See generally* 82 C.J.S. *Statutes* § 292 (1953).

II. Iowa R.Crim.P. 8(2)(b) specifically requires that the trial judge personally address the defendant to some extent before his guilty plea may be accepted. The rule provides:

The court may refuse to accept a plea of guilty, and shall not accept such plea without first *addressing the defendant personally* and determining that the plea is made voluntarily and intelligently and has a factual basis.

Before accepting a plea of guilty, the court *must address the defendant personally* in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) The nature of the charge to which the plea is offered.

(2) The mandatory minimum punishment, if any, and the maximum possible

---

1. The owner's name was actually Tomlinson.

punishment provided by the statute defining the offense to which the plea is offered.

(3) That the defendant has the right to be tried by a jury, and at such trial has the right to assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself.

(4) That if the defendant pleads guilty there will not be a further trial of any kind, so that by pleading guilty the defendant waives the right to a trial. [Emphasis added.]

Some of these enumerated topics of discussion were scarcely mentioned during defendant's plea hearing. Regarding the nature of the charge, the trial judge simply asked for defendant's acknowledgement that he was pleading guilty to the charge of theft in the third degree and that "[t]his consisted of taking parts off of a car that belonged to a man named Thompson." As to defendant's constitutional trial rights and the effect of his plea as a waiver of those rights, the judge merely inquired if defendant understood from the form what his rights were "as far as trial goes and so on," and assumed aloud that he also understood the waiver. The subject of penal consequences was not broached during the colloquy, except for the judge's comment that sentencing would be determined by a judge at a later time.

However, the required topics of discussion were covered to a greater extent in the written plea form. As to the nature of the charge, the form stated that defendant had received a copy of the trial information, with minutes of testimony attached, in which he was charged with theft under section 714.1(1), Supplement to the Code 1977, and that he had discussed the information with his attorney. The form also provided blanks, where defendant filled in the elements of the crime, which, according to the form, he had learned from his attorney. Defendant wrote:

1. Did take the property of Mr. Tomlinson

2. of value over $100 and under $500

3. with the intent to deprive the rightful owner of it.

Additionally, the form said that defendant read and had his attorney explain II Iowa Uniform Jury Instructions No. 215 on intent and that his attorney had explained to him and that he understood general criminal intent and specific criminal intent.

According to the form, defendant's attorney had explained defendant's constitutional rights to him. Also, all the constitutional rights specified in rule 8(2)(b), along with explanation and additional trial rights, were set forth in the form. Specifically, it provided:

8. With a fully [*sic*] understanding of my constitutional rights I hereby specifically waive any right to self-incrimination for purposes of this plea.

9. I understand if I enter a plea of not guilty I would be entitled to:

A. A speedy and a public trial by jury;

B. A verdict of guilty would have to be unanimous;

C. That counsel would be provided at public expense if I was unable to afford counsel;

D. That if I plead not guilty I have the privilege against self-incrimination and I would not be required to testify at my trial;

E. At such trial the State would have to confront me with witnesses upon whose testimony it relied to obtain conviction and I would have a right to cross examine those witnesses;

F. That at such trial I would be presumed innocent until such time, if ever, the State established my guilt beyond a reasonable doubt with such competent evidence as the State could produce;

G. That at such trial I would be entitled to the power of the Court to compel witnesses to appear and testify in my behalf;

H. That at such trial if I did not take the witness stand no inference of guilty could be drawn from such action and the

prosecutor could not comment to the jury on my not so testifying.

I. I understand that if I proceed with a plea of guilty I have waived all of the above enumerated rights with the exception of my right to counsel at these or any later proceedings, and that I would not have a trial.

■ By completing blanks on the form, defendant indicated that he knew that the maximum possible penalty for the crime with which he was accused was two years in prison and that there was no mandatory minimum penalty. Finally, the form provided, "I hereby certify that I do know and understand the charge against me and I know and understand the maximum possible penalty and the mandatory minimum penalty therefor." In view of the scant or nonexistent treatment of the rule's enumerated topics of discussion during the oral colloquy and the amplified treatment in the written form, the initial issue arises of whether a written guilty plea form may be used to satisfy the court's communicative duties under the rule.

There is some inexactness surrounding the personal address requirement of rule 8(2)(b). Study of the rule's language reveals that both references to the requirement that the court address the defendant personally are followed by phrases which begin with "and," a conjunction that in itself shows no interdependent relationship between the phrases it connects. More specifically, the second paragraph of the rule states that the court accepting a guilty plea is required to both personally address the defendant "and" determine that he understands certain matters. We are convinced that, just as they are juxtaposed in one sentence, those two requirements were intended to be inextricably related in practice. In other words, the subject matter of the personal address should be each of the enumerated items which the rule requires that the defendant understand, and the mode for determining the defendant's understanding should be a personal address.

Legislative history of the rule's enactment supports this construction of the rule.

The original draft of the rule, S.F. 85 (passed with minor modifications by the Iowa House of Representatives in 1976 Session, 66th G.A., ch. 1245(2), § 1301), required only that the defendant "be informed" of the nature of the charge, the penal consequences and the constitutional rights waived by pleading guilty. Significantly, that rule was amended by 1977 Session, 67th G.A., S.F. 289, § 21, to say that "the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands" those matters. The amended version was ultimately adopted and is contained in rule 8(2)(b). As a later addition to the original draft, the personal address requirement should be considered an important part of the rule.

■ Also, case law which was available to the legislature indicates intent by the legislature that the enumerated matters be at least substantially covered by oral colloquy. The legislature is presumed to know the state of the law at the time of an enactment. See, e. g., Jahnke v. Incorporated City of Des Moines, 191 N.W.2d 780, 787 (Iowa 1971); Mallory v. Paradise, 173 N.W.2d 264, 266 (Iowa 1969). And we believe that by enacting rule 8(2)(b), the legislature was placing its imprimatur upon the relevant case law as it then existed. See In re Marriage of Burham, 283 N.W.2d 269, 272 (Iowa 1979); Jahnke, 191 N.W.2d at 787.

Prior to the enactment of the rule, this court had extensively discussed the proper procedure for taking guilty pleas in Brainard v. State, 222 N.W.2d 711 (Iowa 1974), and in State v. Sisco, 169 N.W.2d 542 (Iowa 1969). In the landmark case of Sisco, we first held that meaningful compliance with certain procedures designed to assure and demonstrate the voluntariness of guilty pleas was obligatory. Specifically, Sisco adopted, inter alia, section 1.4 of the ABA Project on Minimum Standards for Criminal Justice, Pleas of Guilty (Approved Draft 1968), which requires the judge who accepts a guilty plea to personally address the defendant, determine that he understands the

nature of the charge, inform him that by his plea he waives his right to trial by jury and *inform him of the possible penal consequences.* 169 N.W.2d at 547–48.

In that case, it was not necessary to determine whether personal address was mandatory with regard to each of the listed concerns because the trial judge there did not discuss any of them during the oral colloquy. However, *Sisco* did provide some guidance for this situation when it revealed the purposes of the adopted procedure, as articulated by *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), with regard to the substantially equivalent Fed.R.Crim.P. 11.

> First, . . . it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination. Thus, the more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas.

*McCarthy,* 394 U.S. at 465, 89 S.Ct. at 1170, 22 L.Ed.2d at 424–25 (footnotes omitted), *quoted in Sisco,* 169 N.W.2d at 545–46.

■ The requirement of voluntariness stems from the due process mandate that a waiver of constitutional rights, which is implicit in guilty pleas, must be made voluntarily. *McCarthy,* 394 U.S. at 466, 89 S.Ct. at 1171, 22 L.Ed.2d at 425. To be truly voluntary, the plea must not only be free from compulsion, but must also be knowing and intelligent. *See Henderson v. Morgan,* 426 U.S. 637, 645 & n. 13, 96 S.Ct. 2253, 2257–58, 49 L.Ed.2d 108, 114 (1976); *McCarthy,* 394 U.S. at 466, 89 S.Ct. at 1171, 22

L.Ed.2d at 425. Thus, the defendant should be cognizant of the constitutional protections to which he would otherwise be entitled, *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279–80 (1969), and the nature of the crime with which he is charged, *Smith v. O'Grady,* 312 U.S. 329, 332–34, 61 S.Ct. 572, 573–74, 85 L.Ed. 859, 861–62 (1941).

The defendant's understanding of these matters involves a subjective concern, requiring a delving into the accused's state of mind. How to best effect and demonstrate defendant's understanding, as previously indicated, has been the subject of debate. *Brainard* and the new rule 8(2)(b), by codifying *Brainard,* resolved this debate.

■ *Brainard* decided first that the judge should both explain the charge to the defendant and inquire into the defendant's understanding of it to the extent necessary to demonstrate his comprehension on the record. 222 N.W.2d at 714–15.[2] Secondly, to show the accused's awareness of the possible maximum penalty, *Brainard* advised, "This can be accomplished by telling the defendant the possible maximum sentence prior to his plea or having the defendant himself state his understanding as to the possible maximum sentence." *Id.* at 715. Thirdly, while acknowledging that previous Supreme Court opinions and opinions of this court had not specified the manner in which the record must demonstrate the defendant's understanding of the constitutional rights he waived, *Brainard* decided that in all future cases "the judge must *by personal colloquy* inform the defendant of his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers, and determine that he understands he waives these rights by pleading guilty." *Id.* at 717–18 (emphasis added).

**2.** However, no particular form of explanation or inquiry is mandated. Rather, the extent of dialogue necessary varies with the circumstances of each case. *See, e. g., Hoskins v. State,* 246 N.W.2d 266, 268 (Iowa 1976); *State v. Hansen,* 221 N.W.2d 274, 276 (Iowa 1974); *Brainard,* 222 N.W.2d at 714–15. Useful guid-

ance as to the sort of colloquy appropriate for conveying and demonstrating the defendant's understanding of the nature of the charge may be found in *United States v. Coronado,* 554 F.2d 166, 172–73 (5th Cir.), *cert. denied,* 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977).

In effect, *Brainard* determined that a thorough oral inquiry directed towards the defendant is the most efficacious means of probing and also demonstrating the defendant's understanding. Means falling short of this in most instances deprive a defendant of the benefit of the doubt as to his understanding which should be afforded him. The importance of procedures designed to insure that defendant pleads voluntarily, and thus intelligently, cannot be overestimated. "What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin*, 395 U.S. at 243–44, 89 S.Ct. at 1712, 23 L.Ed.2d at 280.

It has been suggested that the legislature would not have imposed the *Sisco-Brainard* requirements for fear of promoting excessive guilty plea attacks, which *Reaves* lamented those requirements had engendered. That decision was filed fifteen days after the legislature's enactment of the rule, which occurred by a vote of the Iowa Senate on the amended bill on May 10, 1977. 1977 S.J. 1431–32. Thus the legislature could not have considered the *Reaves* opinion before it passed the rule. Moreover, the fears voiced in *Reaves* were proven statistically to be unwarranted. *See Reaves*, 254 N.W.2d at 508–09 (McCormick, J., dissenting). They are also logically unwarranted. A court's thorough probing of the defendant's understanding of the meaning and consequences of his guilty plea by means of personal address will discourage rather than foster later attacks of the plea. This is because the record of the guilty plea proceeding will clearly demonstrate the plea was intelligently and voluntarily made and thus beyond the pale of constitutional challenge.

■ This holding should not be construed to mean that every minor omission from the oral colloquy in a guilty plea proceedings should be fatal. As *Sisco* announced, "meaningful compliance," 169 N.W.2d at 548, or "substantial compliance," *id.* at 551, with procedural guidelines for taking guilty pleas is sufficient. Certainly a plea-taking error which raises no doubt as to the voluntariness or factual accuracy of the plea may be properly disregarded, provided the defendant is unable to prove prejudice. For instance, an inadvertent omission of reference to the accused's right to assistance of counsel at trial during the oral colloquy should not alone vitiate a plea in a situation where the defendant is already represented by appointed counsel, he has read and signed a form adequately explaining this right and the trial judge has determined through appropriate inquiry that the defendant possesses a clear understanding of the remainder of the form. A contrary result would serve only to exalt formalism at the expense of the societal interest in finality of judgments. *See generally Blackledge v. Allison*, 431 U.S. 63, 71–72, 97 S.Ct. 1621, 1627–28, 52 L.Ed.2d 136, 145 (1977); *id.* at 83–84, 97 S.Ct. at 1634, 52 L.Ed.2d at 153 (Powell, J., concurring) (regarding importance of finality to a system of justice); Comment, *Appellate Review of Guilty Plea Acceptances in Federal Court: Harmless Error in a Rule 11 Proceeding?*, 18 Santa Clara L.Rev. 687 (1978) (recommending standard of review of appreciable doubt as to voluntariness of the plea). *But see* Comment, *Pleading Guilty: Illinois Supreme Court Rule 402 and The New Federal Rule of Criminal Procedure 11*, 1975 U.Ill.L.F. 116, 131–34 (recommending standard of review of strict compliance) [hereinafter cited as Illinois Comment].

■ Nonetheless, in this case there was extensive disregard of the rule's requirements, thus raising doubts as to the voluntariness of the plea. The record provides no evidence of an elicitation from defendant of his understanding of his particular constitutional trial rights, other than the right to a jury trial, or the penal consequences of the plea. Nor is he shown to have adequately understood the nature of the charge.[3] Nor

---

**3.** It is uncertain whether rule 8(2)(b) requires oral dialogue between the court and defendant regarding a factual basis for the plea. *Compare* Iowa R.Crim.P. 8(2)(b) (referring to per-

was there sufficient inquiry into his comprehension of parts of the written plea form from which a compelling inference of understanding of the entire form might be drawn. Under these circumstances, we conclude substantial compliance with the rule was not achieved, and therefore the conviction must be reversed.

The majority of federal court decisions interpreting the significance of a written plea form under Fed.R.Crim.P. 11 support our view. The language of rule 8(2)(b) is very similar to that of Fed.R.Crim.P. 11(c), (d). Judicial interpretations of similar statutory language in other jurisdictions are entitled to great weight. *Quaker Oats Co. v. Cedar Rapids Human Rights Commission*, 268 N.W.2d 862, 866 (Iowa 1978).[4]

In summary, the federal decisions indicate that while the written plea form may be useful for some purposes,[5] it cannot serve as a general substitute for the rule's requirement of personal address regarding the enumerated matters. The essential problem with written forms is that they do not reveal the defendant's state of mind with regard to the matters which he must understand for the plea to be voluntary. As *United States v. Aleman*, 417 F.Supp. 117, 122 (S.D.Tex.1976), explains: "[T]his

court does not feel that a sterile piece of paper alone, without direct oral dialogue on point can be said to convey knowledge of fundamental constitutional rights and a waiver concomitant to such conveyance be thereby imputed." In keeping with this thinking, several federal courts have reversed convictions by guilty pleas where there was more than trivial reliance upon a written form to make the determinations of understanding that the federal rule, as amended in 1974, requires to be performed by personal address. *See United States v. Del Prete*, 567 F.2d 928, 930 (9th Cir. 1978) (failure to inform of mandatory special parole term and other matters); *United States v. Adams*, 566 F.2d 962, 967 n. 6 (5th Cir. 1978) (failure to inform of right to assistance of counsel, right to confront adverse witnesses, privilege against self-incrimination and nature of charge); *Aleman*, 417 F.Supp. at 122 (failure to inform of right to confront accusers and privilege against self-incrimination).

■ III. Besides contending that the written plea form executed by defendant could be used to show his requisite awareness, the State also argues that this form and another form, executed by defendant's

sonal address of the defendant in conjunction with the determination of a factual basis) *with* ABA Project on Minimum Standards for Criminal Justice, Pleas of Guilty, § 1.6 (Approved Draft 1968), *adopted in State v. Sisco*, 169 N.W.2d 542, 548 (Iowa 1969), *and* Fed.R. Crim.P. 11(f) (omitting any such reference). Quite possibly, the inclusion of the factual basis requirement in the same sentence as that prescribing personal address by the court was merely for purposes of word economy. This interpretation is consistent with the otherwise apparent attempt of the legislature to pattern rule 8(2)(b) after Fed.R.Crim.P. 11.

4. However, we recognize that our standard of review of substantial compliance conflicts with the presumed prejudice standard mandated for the federal courts by the Supreme Court, pursuant to its supervisory power over the federal courts, in *McCarthy v. United States*, 394 U.S. 459, 463–64, 89 S.Ct. 1166, 1169, 22 L.Ed.2d 418, 424 (1969). Therefore, insofar as any federal court decision is based upon technical noncompliance with the rule where the plea-taking procedure otherwise demonstrated substantial compliance, it is distinguishable.

5. It has been recognized that a written plea form possibly may serve as a "partial record surrogate for oral dialogue between the court and the defendant." *United States v. Adams*, 566 F.2d 962, 967 n. 6 (5th Cir. 1978) (dictum) (quoting *Burroughs v. United States*, 515 F.2d 824, 828 (5th Cir. 1975)); *Kloner v. United States*, 535 F.2d 730, 734 (2d Cir.), *cert. denied*, 429 U.S. 942, 97 S.Ct. 361, 50 L.Ed.2d 312 (1976) (recommending use of printed form to insure against noncompliance with rule, while refraining from advocating form as "touchstone for compliance"). Similarly, Illinois courts have interpreted their rule, from which the federal rule was largely patterned, to permit a written waiver to supply a single missing admonition, but not the entire personal inquiry requirement. Illinois Comment, *supra*, at 127. Another appropriate use for plea forms recognized by a federal court is the assistance, albeit without objective demonstration, of defendant's subjective understanding of the matters listed in the rule. *See United States v. Del Prete*, 567 F.2d 928, 930 (9th Cir. 1978).

counsel, showed that defendant had learned all the necessary information from his attorney. As the State asserts, *State v. Reaves*, 254 N.W.2d 488, 492–93 (Iowa 1977), is consistent with this view as to guilty pleas governed by pre-rule 8(2)(b) standards. However, as previously stated, we believe the new rule represents a codification of the *Brainard* preference for an in-court colloquy as the means to impart and demonstrate the accused's awareness. As such, it prevails over the *Reaves* holding that a defense counsel's assurances or any other means of record suffice to demonstrate the defendant's understanding of the requisite matters.

■■■ IV. Even assuming that the written plea form could be used to fill the gaps in the oral colloquy prescribed by the rule, there is no indication in the record, including the written plea form, that defendant understood the nature of the charge to which he pled guilty or that there is a factual basis for the plea. Absent is any sign that defendant had the intent to deprive the owner of his property within the meaning of section 714.1(1), Supplement to the Code 1977, or that he understood that intent to be a necessary element of the crime.

Prior opinions of this court and federal courts have required documentation of the defendant's understanding of the specific intent element of the offense to uphold the guilty plea. *See, e. g., Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) (intent to cause death for second degree murder charge); *Sierra v. Government of Canal Zone*, 546 F.2d 77, 80–81 (5th Cir. 1977) (intent to kill for second degree murder charge and intent to distribute for marijuana charge); *State v. Auerbach*, 283 N.W.2d 278, 280 (Iowa 1979) (intent to deprive owner permanently for charge of larceny of a motor vehicle); *State v. Ohnemus*, 254 N.W.2d 524, 524–25 (Iowa 1977) (intent element for crime of entering a dwelling in the nighttime with intent to commit a public offense); *Hoskins v. State*, 246 N.W.2d 266, 267–68 (Iowa 1976) (intent to defraud for crime of uttering of false bank check);

*State v. Buhr*, 243 N.W.2d 546, 548–49 (Iowa 1976) (intent to kill or maim victim for charge of robbery with aggravation); *State v. Frazier*, 232 N.W.2d 480, 481–82 (Iowa 1975) (intent to commit specific felony for charge of assault with intent to commit a felony). *But see State v. Reaves*, 254 N.W.2d 488, 494 (Iowa 1977); *Michels v. Brewer*, 211 N.W.2d 293, 296 (Iowa 1973) (finding understanding of the nature of the charge apparent under all the circumstances despite the trial court's failure to specifically explain the intent element).

During the oral proceeding, the extent of the judge's explanation of the charge of theft in the third degree to this nineteen-year-old high school drop-out was that it may consist of taking automobile parts from another. Moreover, there was practically no inquiry by the judge into defendant's understanding of the charge. He was not even asked the minimal question of whether he understood the nature of the charge. That omission is insignificant only if defendant's understanding is otherwise apparent from the record. *Brainard*, 222 N.W.2d at 715.

Trial court's oral summary of defendant's act also failed to establish a factual basis for the plea from the transcript of the plea-taking proceeding. The summary did not necessarily describe a crime. Faced with a similar situation, one federal court of appeals concluded:

> A bare recitation that the defendant "stole" a typewriter from a certain place does not sufficiently portray the facts necessary to satisfy the court that the elements of larceny were present, and particularly where more than one defendant is charged, a sufficient statement of the acts *and intent* of the particular defendant, what the defendant did *and intended*, is necessary to an intelligent determination of whether there was a factual basis for the plea.

*United States v. Steele*, 413 F.2d 967, 969 (2d Cir. 1969) (emphasis added), *overruled in irrelevant part by Manley v. United States*, 432 F.2d 1241, 1245 (2d Cir. 1970) (en banc); *cf. Hoskins*, 246 N.W.2d at 268 (noting that

the judge's summary of the offense as writing a check without funds to cover it does not necessarily describe criminal behavior).

Furthermore, the plea form should have alerted trial court of the need for additional explanation and exploration into defendant's understanding of the intent element. Defendant completed his written plea of guilty with regard to his acts in connection with the crime as follows: "I took part off of Tomlinson car and hide them [sic] to teach him a lesson. Over a 100.00 [sic]." The inferences to be drawn from this statement concerning defendant's intent are conflicting. Possibly, defendant could have felt his teaching mission would be accomplished by immediately returning the parts upon the owner's discovery of his loss. On the other hand, defendant might have intended to teach in a more punitive fashion, by more permanently depriving the owner of his property. Presumably, in the second case, his intent would be consistent with the crime charged; in the first it would not. Also the fact that he meant to "hide" the car parts, as opposed to sell them or appropriate them to his own use, is consistent with either interpretation. We have previously held that a defendant's equivocal remarks concerning his intent will not negate the determination of a factual basis or of his understanding of the charge if those determinations are otherwise supported by the record. *See, e. g., State v. Townsend,* 238 N.W.2d 351, 355–56 (Iowa 1976); *State v. Hansen,* 221 N.W.2d 274, 276–77 (Iowa 1974). *See also* 8 *Moore's Federal Practice* ¶ 11.03[3], at 11–78 (2d ed. 1975). However, where other sources are missing or deficient, the plea should not be upheld. *See, e. g., Rizzo v. United States,* 516 F.2d 789 (2d Cir. 1975); *Ohnemus,* 254 N.W.2d at 525–26; *Brainard,* 222 N.W.2d at 721.

In this case, the record, including the forms executed by defendant and his attorney, does not support those determinations. Defendant's mere listing on the form of intent to deprive the rightful owner of his property, at counsel's direction, as an element of the crime does not necessarily reveal defendant's understanding of that element. Only lay-oriented explanations qualify to alone presume understanding. *See Hoskins,* 246 N.W.2d at 267–68; *Ryan v. Iowa State Penitentiary, Ft. Madison,* 218 N.W.2d 616, 619 (Iowa 1974). Although there is some uncertainty as to the meaning of "intent to deprive" under the new statute, § 714.1(1), The Code 1979, *see* J. Yeager & R. Carlson, 4 *Iowa Practice, Criminal Law and Procedure* § 313 (1979), II Iowa Uniform Jury Instructions No. 1403 provides some guidance which could be shared with defendants offering guilty pleas.

Nor do the facts that the plea form indicated that defendant had discussed the elements and facts of the crime with his attorney and that the attorney certified, on a separate form, that he was satisfied that the plea was factually justified overcome any of the plea's deficiencies. "[A] sentencing court may not abrogate or delegate to anyone, including attorney for accused, the duty to determine defendant's knowledge of the charge, appreciation of legal consequences of a guilty plea, whether it is voluntarily entered, or existence of facts supporting it." *State v. Sisco,* 169 N.W.2d 542, 548 (Iowa 1969). By this, we do not intimate that an attorney's declaration of factual accuracy may never satisfy the requirement of a factual basis for the plea. *See Henderson v. Morgan,* 426 U.S. 637, 646, 96 S.Ct. 2253, 2258, 49 L.Ed.2d 108, 115 (1976). However, reliance by a trial court upon an attorney's declaration which fails to detail the facts upon which he bases his conclusion constitutes an impermissible delegation by the court of its duty to determine the existence of a factual basis. *See United States v. Tucker,* 425 F.2d 624, 628–29 (4th Cir. 1970); *cf. Ryan* 218 N.W.2d at 619 (concluding that prosecutor's expressing that there is a factual basis for a plea, as opposed to his relating the factual basis, is insufficient under *Sisco* standard).

Nor does the plea form's statement that defendant had read and had his attorney explain to him II Iowa Uniform Jury Instructions No. 215 support a determination that defendant understood the intent element of the charge. The statement

merely reflects an invalid delegation by the court of its duty to determine if defendant understands the nature of the charge. In any event, that instruction does not elucidate the specific intent required for conviction of theft under section 714.1(1).

■ Finally, the form's conclusory statement that defendant understood the nature of the charge cannot alone dispel the doubt cast upon his understanding by the brevity of the oral colloquy concerning the matter and his ambiguous written description of the acts constituting the offense. *See United States v. Lincecum*, 568 F.2d 1229, 1231 (5th Cir. 1978) ("single response, by the defendant that he 'understands' the charge gives no assurance or basis for believing that he does").

■ Other appropriate sources for establishing a factual basis are also of no assistance to this plea. One such source was the minutes of testimony attached to the information. *See, e. g., State v. Marsan*, 221 N.W.2d 278, 280 (Iowa 1974); *State v. Quinn*, 197 N.W.2d 624, 625 (Iowa 1972) (per curiam). Those minutes provide support for the facts that car parts and tools belonging to Tomlinson were taken from a garage he was renting and that the stolen property was later recovered from defendant. However, there is no indication in the minutes that defendant intended to keep Tomlinson's property for any particular length of time.

■ Presentence reports are another source which in the past have been examined to determine whether a factual basis exists. *See, e. g., United States v. Bradin*, 535 F.2d 1039, 1041 (8th Cir. 1976); *Ryan*, 218 N.W.2d at 619 (dictum). However, rule 8(2)(b) apparently precludes the use of presentence reports in determining whether a factual basis exists unless the report should be available at the time of the plea hearing. *Compare* Iowa R.Crim.P. 8(2)(b) ("The court . . . shall not accept [a plea of guilty] without first . . . determining that the plea . . . has a factual basis.") *with* ABA Project on Minimum Standards for Criminal Justice, Pleas of Guilty, § 1.6

(Approved Draft 1968) *and* Fed.R.Crim.P. 11(f) ("Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea" without making such inquiry. as satisfies it that there is a factual basis.).

■ The latter rule, adopted in *Sisco*, has been interpreted by this court as permitting the practice of establishing the factual basis for the plea at a time subsequent to the acceptance of the plea. *See, e. g., Manley v. State*, 278 N.W.2d 1, 3 (Iowa 1979) (degree of guilt hearing); *State v. Watts*, 225 N.W.2d 143, 145–46 (Iowa 1975) (sentencing hearing). The equivalent federal rule, however, has been interpreted by some courts as not relieving the trial judge of the responsibility of adequately determining that a factual basis exists before the plea is accepted. *See United States v. Wetterlin*, 583 F.2d 346, 352–53 (7th Cir.. 1978), *cert. denied,* 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979); *Irizarry v. United States*, 508 F.2d 960, 967 & n.7 (2d Cir. 1975); *United States v. Zampitella*, 416 F.Supp. 604, 605 (E.D.Pa.1976); 8 *Moore's Federal Practice* ¶ 11.03[3], at 11–73 to 74 (2d ed. 1974). *But see Bradin*, 535 F.2d at 1041; *United States v. Gulledge*, 491 F.2d 679 (5th Cir.), *cert. denied*, 419 U.S. 849, 95 S.Ct. 89, 42 L.Ed.2d 80 (1974), *implicitly overruling United States v. White*, 483 F.2d 71, 73 (5th Cir. 1973); *Burton v. United States*, 483 F.2d 1182, 1190 (9th Cir. 1973); *United States v. Romanello*, 425 F.Supp. 304, 309 (D.Conn.1975); *Turner v. United States*, 320 F.Supp. 1204, 1206 (E.D.La.1970) (indicating that court's satisfaction of factual basis need not be accomplished until after plea is accepted). We conclude that in light of the explicit language of rule 8(2)(b) and the consistent view of some federal courts interpreting the less literally restrictive federal rule, trial courts in this state must determine on the record that a factual basis for the plea exists before the plea is accepted. Such a critical determination cannot be left until after the acceptance of the plea.

In summary, we conclude that trial court failed to comply with the rule's require-

ments of personally addressing the defendant to inform him of and determine that he understands the nature of the charge, its possible penal consequences and the particular constitutional rights he waives by pleading guilty and of determining that a factual basis for the plea exists. For these reasons, the judgment of conviction and sentence are set aside and defendant shall be permitted to plead anew.

REVERSED AND REMANDED.

All Justices concur except LeGRAND, J., who concurs specially.

HARRIS, REES, and McGIVERIN, JJ., who dissent.

LeGRAND, Justice (concurring specially).

Although I agree with much of the dissent and disagree with most of the majority opinion, I find no escape from the language of Iowa R.Crim.P. 8(2), which I believe dictates the result. I therefore concur in the result.

HARRIS, Justice (dissenting).

There are three holdings in the majority opinion: (1) our opinion in *State v. Reaves*, 254 N.W.2d 488 (Iowa 1977), logically should be overruled in favor of its dissent (thus reinstating *Sisco* and *Brainard*); (2) this result was mandated by the legislature; and (3) the use of this written plea of guilty by the trial court was reversible error. I still subscribe to the views expressed by our majority opinion in *Reaves*. I do not think the legislature, by Iowa R.Crim.P. 8(2)(b), intended to codify the *Reaves* dissent. And I do not believe the trial court committed reversible error in the reliance here on a written plea of guilty. For these reasons I respectfully dissent.

I. *Sisco, Brainard, and Reaves.* No one can quarrel with the seriousness of pleading guilty to a crime. No rational person would want an accused to do so hastily or without the fullest possible understanding. Starting with these sound premises the majority chooses to overrule our *Reaves* decision. In doing so the majority is retracing a trail that should seem familiar. We have trav-

eled it before. According to Santayana: "Those who do not remember the past are condemned to repeat it." I would not willingly overrule *State v. Reaves* because I would not willingly repeat our past experience in guilty plea cases.

Under our decisions in *State v. Sisco*, 169 N.W.2d 542 (Iowa 1969), and *Brainard v. State*, 222 N.W.2d 711 (Iowa 1974), and their progeny, we imposed what amounted to a rigid courtroom litany for taking guilty pleas. We denied doing so in *Brainard*, 222 N.W.2d at 721: "[W]e have emphasized and continue to do so that judges need not follow a ritual in making the necessary determinations for acceptance of guilty pleas . . . ." Nevertheless our experience clearly shows that we did in fact make a fetish over the form of the proceedings. In *Reaves* we set out an incomplete list of cases in which we had reviewed guilty pleas in the seven years and ten months following *Sisco*. 254 N.W.2d at 492–93. Sixty-three cases were cited.

Establishing the defendant's subjective understanding of the charge and his rights is a worthy goal of obvious importance. But our experience during those 63 cases convinced me that it is hopeless to pretend a judge can give the accused useful instructions in the detail demanded by *Sisco* and *Brainard*. The required litany became a trap for the judge and was wholly unrelated to the defendant's real understanding. The right of a defendant, dissatisfied with the sentence imposed after plea, to have his plea set aside did not turn on his understanding. No claim of misunderstanding was necessary. All that had to be found was some flaw in the judge's litany, some omission of one of the defendant's rights, or of some legal element of the offense charged.

In *Reaves* we noted a certain irony in the rigidity of the requirement. It is debatable how much of this detailed information can be actually assimilated in a courtroom, especially by the one whose understanding is involved. Our tradition in Iowa, as old as statehood, has been to provide and rely upon an attorney for the accused. Counsel

has a better chance than the judge to give the necessary legal advice—outside the charged atmosphere of a courtroom.

There is another irony. The necessary cost of counsel for the accused comes high. A substantial part of that cost comes directly from public funds and citizens ultimately pay for all of it. They also pay the cost of operating courts, including everything incident to our review of the trial judge's review of the legal information that counsel were paid to furnish initially.

It seems to me that all this expensive effort did not improve the quality of justice for the accused. The litany was an advantage to the accused in only one respect. It gave him the hope that the judge might omit some of the words so as to cause the guilty plea to be set aside. But if the detailed litany is needed in order for an accused to learn his rights there is something fundamentally wrong with our adversary system.

The heart of the *Reaves* opinion, now set aside by the majority opinion, was simple and modest enough. I think it was eminently fair: "Unless something causes, or reasonably should cause, the trial judge to believe otherwise he may rely on defense counsel's assurances that an accused has been advised of, and is aware of, everything required by *Sisco*." 254 N.W.2d at 493.

Our *Reaves* holding still strikes me as just, sound, and logical.

II. *The effect of rule 8(2)(b).* The majority believes the *Reaves* dissent was mandated by Iowa R.Crim.P. 8(2)(b) and points to legislative history to support the claim. In the criminal code revision of 1976 a rule was proposed for the taking of guilty pleas. Another provision provided that this court "is authorized to propose changes in the rules of criminal procedures for consideration by the First Session of the Sixty-seventh Session of the General Assembly. . . ." 1976 Session, 66th G.A., ch. 1245(4), § 530. A minority of our court at that time recommended that the rule be adopted as it now appears. A majority of the members of our court recommended that most of the detail of the rule be delet-

ed. Because the general assembly adopted the words recommended by what was then the minority of the court it is now argued that the legislature was thereby subscribing to the judicial views held by those four justices.

I disagree. I think the rule should be taken on its face and applied as it is written. Legislative intent should be gathered from the clear language of an unambiguous statute, in this case an unambiguous rule, rather than from private opinions on the subject. We rejected as unpersuasive individual legislators' opinions of legislative intent in *Iowa State Ed. Ass'n v. PERB*, 269 N.W.2d 446, 448 (Iowa 1978):

> The legislative process is a complex one. A statute is often, perhaps generally, a consensus expression of conflicting private views. Those views are often subjective. A legislator can testify with authority only as to his own understanding of the words in question. What impelled another legislator to vote for the wording is apt to be unfathomable.

> Accordingly we are usually unwilling to rely upon the interpretations of individual legislators for statutory meaning.

This unambiguous rule should be unaffected by the fact that the legislature rejected the request of a majority of our court that it desist entirely from specifying a procedure for guilty pleas. The procedure was indeed specified and it was specified in accordance with a request. But it should be applied as it is written and not necessarily as envisioned by those interested on either side of the question of whether a *Sisco-Brainard* litany should be imposed.

Turning to the rule it appears that there are three steps to be taken in satisfying the requirements of rule 8(2)(b). Two of the steps should require little or no discussion on these facts.

The trial court must address the defendant personally. This was done in the present case; the trial court addressed the defendant personally in open court and on the record. Secondly, the trial court is to determine that the plea is made voluntarily,

intelligently, has a factual basis, and that the defendant understands the legal matters listed in the rule. Notably, the rule does not require that this determination must be made exclusively on the basis of the dialogue between the judge and the accused.

Here the trial court obviously determined, as I would have, that the plea was made voluntarily and intelligently and had a factual basis. The trial court likewise obviously determined, as I would have, that the defendant understood all that he acknowledged he did in the written guilty plea.

The third step is that the trial court inform the defendant of those same legal matters. I think that, by integrating the written plea into the record as a part of the personal dialogue with the defendant, the trial court also substantially complied with this requirement. The written plea set out: (1) the charge itself; (2) the maximum and minimum penalties that could be imposed; (3) defendant's trial rights; and (4) that the defendant would waive those rights by pleading guilty. In other words the defendant and his attorney, who both signed the plea, thereby recited, acknowledged, waived, and satisfied all the rule's requirements. I think this is substantial compliance and all that the rule requires.

III. *Use of a writing.* Our whole system of law, from the statute of frauds to the statute of wills, is replete with rules that are grounded on the premise that the written word is more reliable than the spoken word. One might be rather perfunctory in signing a deed or in executing a will. But this is less likely than would be the case if such matters could be done orally. I see no reason to give written documents no credence or less credence than would be accorded an oral statement. And I see no reason that we should go out our way to do so in criminal matters.

Because the written plea here was acknowledged in open court I think it could be used, not in substitution for, but rather in connection with the rule 8(2)(b) procedure. Taken together I believe there was substan-

tial compliance with all the requirements for taking guilty pleas under the record made in open court and the written plea. I would affirm.

REES and McGIVERIN, JJ., join this dissent.