# IN THE SUPREME COURT OF IOWA

No. 12–0010

Filed July 5, 2013

**STATE OF IOWA,**

Appellee,

vs.

**CRAIG ANTHONY FINNEY,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Pottawattamie County, Mark J. Eveloff, Judge.

The State seeks further review of a court of appeals decision vacating a criminal defendant's conviction and sentence. **DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.**

Sean M. Conway of Dornan, Lustgarten & Troia, PC LLO, Omaha, Nebraska, for appellant.

Thomas J. Miller, Attorney General, Darrel L. Mullins, Assistant Attorney General, Matthew D. Wilber, County Attorney, and Christine M. Shockey, Assistant County Attorney, for appellee.

**APPEL, Justice.**

In this case, we consider a challenge to a guilty plea on grounds of ineffective assistance of counsel when the guilty plea colloquy failed to establish a factual basis for the underlying charge, but when the minutes of testimony provide substantial support for the crime. The court of appeals held that the guilty plea must be vacated because of the inadequacy of the colloquy. It remanded the case to the district court for further proceedings. We granted further review. We now vacate the decision of the court of appeals and affirm the conviction and sentence of the district court.

## I. Factual and Procedural Background.

The State charged Craig Finney with the attempted murder of Patty Harker, the attempted murder of Benjamin Shimmin, two counts of assault while participating in a felony, and one count each of first-degree burglary, willful injury causing serious injury, going armed with intent, and flight to avoid prosecution. The minutes of testimony outline the factual basis of the charges.

According to the minutes, Finney and Harker had previously dated. The minutes allege that in the early morning hours of June 17, 2011, Finney, after seeing Harker and Shimmin together at a bar, went to Harker's house with a shotgun, kicked open the door, fired one shot through a door into the bathroom where Shimmin was hiding, and shot Harker in the back as she attempted to flee. The minutes also allege that Finney shot himself and fled the scene. After the incident, Finney put his gun in his truck, parked it at a local pond, solicited the help of his son, changed clothes, and got into another vehicle. Police recovered Finney's truck and shotgun and apprehended him the next day in Missouri.

Finney initially pled not guilty to the charges. He later agreed to plead guilty to the attempted murder of Harker in exchange for the dismissal of the other charges. At the plea hearing, the court informed Finney of his rights. The following colloquy then occurred regarding the factual basis for Finney's guilty plea to the crime of attempted murder:

> THE COURT: Would you explain to the Court exactly what you did, why you are pleading guilty to the charge of attempted murder?
>
> [FINNEY]: Oh, yes. I shot Patty.
>
> THE COURT: By Patty—
>
> [FINNEY]: I could go—I don't know—
>
> THE COURT: —is that Patty Harker?
>
> [FINNEY]: Yes, it is.

At this point, the district court accepted Finney's guilty plea to the crime of attempted murder.

Finney then waived his right to file a motion in arrest of judgment and elected to be sentenced immediately. Finney addressed the district court, expressing remorse for his "terrible" actions and for his inability to pay restitution to his victims. He further stated: "I took a plea because never once I pled innocent. I never said I was innocent. I—I took the plea because I'm guilty."

The State addressed the court, stating that Finney had repeatedly abused Harker during their ten-year relationship. The State then provided the court with an overview of the allegations contained in the minutes of testimony. The district court sentenced Finney to twenty-five years in prison and ordered him to pay restitution.

Finney appealed, claiming he received ineffective assistance of counsel because his trial counsel permitted him to plead guilty to

attempted murder without an established factual basis for each element of the crime. He also argued that the court illegally imposed a mandatory sentence of eighty-five percent of the twenty-five-year sentence for attempted murder instead of the statutorily established minimum sentence of seventy percent.

We transferred the case to the court of appeals. The court of appeals vacated Finney's conviction and sentence. The court of appeals reasoned that under *State v. Philo*, 697 N.W.2d 481, 485–86 (Iowa 2005), a trial court accepting a guilty plea must specify on the record the facts and evidence relied upon to establish the factual basis for the plea if the facts or evidence are gleaned from a source other than the defendant's own statements. The court of appeals found that Finney's in-court statement, "I shot Patty," standing alone, was insufficient to provide a factual basis for Finney's intent to cause Harker's death as required for the crime of attempted murder. As a result, the court of appeals vacated Finney's conviction and sentence and remanded the case for further proceedings to allow the State to supplement the record to establish a factual basis for the plea.

We granted further review. For the reasons expressed below, we now vacate the decision of the court of appeals and affirm Finney's conviction and sentence.

## II. Preservation of Error.

Iowa Rule of Criminal Procedure 2.24(3)(*a*) provides that a defendant is precluded from challenging a guilty plea on appeal unless the defendant files a motion in arrest of judgment. We have recognized an exception to the rule, however, when a defendant alleges trial counsel was ineffective for permitting him to plead guilty to a charge for which there is no factual basis and for failing to thereafter file a motion in

arrest of judgment. *See, e.g., State v. Allen*, 708 N.W.2d 361, 368 (Iowa 2006); *Philo*, 697 N.W.2d at 488; *State v. Royer*, 632 N.W.2d 905, 909 (Iowa 2001); *State v. Schoelerman*, 315 N.W.2d 67, 72–73 (Iowa 1982). Accordingly, because Finney argues his counsel was ineffective for permitting the guilty plea without establishing a factual basis of each element, we may consider the claim.

### III. Scope of Review.

We review claims of ineffective assistance of counsel de novo. *Everett v. State*, 789 N.W.2d 151, 158 (Iowa 2010). Although we normally preserve ineffective-assistance claims for postconviction relief actions, "we will address such claims on direct appeal when the record is sufficient to permit a ruling." *State v. Wills*, 696 N.W.2d 20, 22 (Iowa 2005). The record in this case is sufficient to allow us to address Finney's ineffective-assistance claim on direct appeal.

### IV. Discussion of Challenge to Plea Bargain.

**A. Introduction.** Plea bargaining plays an essential role in the modern criminal justice system in the United States. It has been estimated that approximately ninety-five percent of the criminal matters in this country are resolved through plea bargaining. Kristen M. Hall, *Ignorance Is Not Necessarily Bliss: The Third Circuit Expands the Requirements for a Knowing and Voluntary Plea in* Jameson v. Klem, 54 Vill. L. Rev. 753, 753 (2009) [hereinafter Hall] (discussing adjudication in federal district court); *see also United States v. Timmreck*, 441 U.S. 780, 784, 99 S. Ct. 2085, 2087–88, 60 L. Ed. 2d 634, 639 (1979) (noting that "the vast majority of criminal convictions result from [guilty] pleas"

(citation and internal quotation marks omitted)). The critics of plea bargaining abound.[1]

While the criminal trial itself has been historically subject to a number of relatively stringent procedural safeguards found in the Bill of Rights, plea bargaining was largely unregulated until relatively recently in our nation's history. Stephanos Bibas, *Regulating the Plea-Bargaining Market: From Caveat Emptor to Consumer Protection*, 99 Cal. L. Rev. 1117, 1119 (2011). In the 1960s, the United States Supreme Court began to expand protections available to criminal defendants in the plea-bargaining context both through rulemaking and case adjudication.

Many states, including Iowa, followed the Supreme Court's lead. Nearly all states now require through their rules of criminal procedure that before a court accepts a guilty plea for serious crimes, the district court must engage in some kind of colloquy with the defendant in order to ensure that there is a factual basis for the plea and that the defendant has knowingly and voluntarily waived important constitutional rights. For instance, Iowa Rule of Criminal Procedure 2.8(2)(*b*) states, in pertinent part, "The court may refuse to accept a plea of guilty, and shall not accept a plea of guilty without first determining that the plea is made voluntarily and intelligently and has a factual basis."

While plea colloquies are now nearly universally required, a number of important questions have arisen. For instance, controversies

---

[1]The classic critiques may be found in Stephen J. Schulhofer, *Is Plea Bargaining Inevitable?*, 97 Harv. L. Rev. 1037 (1984), and Albert W. Alschuler, *The Changing Plea Bargaining Debate*, 69 Cal. L. Rev. 652 (1981). Other critiques may be found in Julian A. Cook, *All Aboard! The Supreme Court, Guilty Pleas, and the Railroading of Criminal Defendants*, 75 U. Colo. L. Rev. 863 (2004), Susan R. Klein, *Enhancing the Judicial Role in Criminal Plea and Sentence Bargaining*, 84 Tex. L. Rev. 2023, 2048–50 (2006), and Máximo Langer, *Rethinking Plea Bargaining: The Practice and Reform of Prosecutorial Adjudication in American Criminal Procedure*, 33 Am. J. Crim. L. 223 (2006).

have arisen regarding what a district court may rely upon in determining that a guilty plea is supported by a factual basis. Further, there have been disputes regarding the consequences resulting from an inadequate plea colloquy.

In this case, we are asked to vacate a plea bargain on the ground that the record made at the plea colloquy did not provide a factual basis for the intent necessary to support a charge of attempted murder. To set the stage for resolution of this case, we first survey the legal positions of the parties. We then review the origins and development of guilty plea jurisprudence in federal law and in our own law. In the survey of guilty plea cases, we pay particular attention to the multiple goals of the guilty plea colloquy and the difference between objective and subjective inquiries. Finally, based on the principles gleaned from this review and our caselaw, we resolve the issue posed in this case.

**B. Positions of the Parties.** Finney claims his conviction and sentence were based on a flawed guilty plea process and must be reversed. Citing *Philo*, Finney asserts an attorney does not provide effective assistance when a defendant enters a plea and the record developed at the time of the acceptance of the plea does not provide a factual basis for the charge. Specifically, Finney claims his explanation, "I shot Patty," at the plea hearing does not establish that he specifically intended to cause Harker's death as required for the crime of attempted murder under Iowa Code section 707.11 (2011). Citing *State v. Straw*, 709 N.W.2d 128, 138 (Iowa 2006), Finney asserts that due to the lack of a factual basis in the plea colloquy, his conviction and sentence must be vacated.

The State counters that while the plea colloquy in this case may not touch upon the issue of specific intent to kill, the district court could

nonetheless rely upon the entire record, including the minutes of testimony, the defendant's statements, the statements of the attorneys, any presentence report, and any matter in the record. *See, e.g., State v. Brooks*, 555 N.W.2d 446, 448 (Iowa 1996). The State emphasizes that the record need not establish guilt beyond a reasonable doubt, but only a factual basis for the guilty plea. *State v. Keene*, 630 N.W.2d 579, 581 (Iowa 2001). According to the State, the minutes of testimony demonstrate an ample factual basis for the plea. In any event, the State further argues that the remedy, to the extent the record is deficient, is a remand to allow the State to establish a factual basis, not a vacation of the judgment and sentence. *State v. Schminkey*, 597 N.W.2d 785, 792 (Iowa 1999).

The issue boils down to this: what happens when a district court finds a factual basis for the charge at the plea hearing, but does not identify support in the record for the finding and the plea colloquy preceding the district court's finding does not support an essential element of the crime?

**C. Regulation of Plea Bargaining by the United States Supreme Court.**

1. *Introduction.* In 1944, Congress enacted Rule 11 of the Federal Rules of Criminal Procedure, which related to plea bargaining. As originally drafted, Rule 11 simply provided that a district court should not accept a plea " 'without first determining that the plea is made voluntarily with understanding of the nature of the charge.' " Hall, 54 Vill. L. Rev. at 757 (quoting Fed. R. Civ. P. 11 (1944 adoption)). The general command of the original rule created inconsistent applications, however, and in 1966, the Supreme Court amended Rule 11 to require specifically that the sentencing judge address the defendant *personally*,

determine that the defendant entered the guilty plea voluntarily and with an understanding of the nature of the charge, determine that the defendant understood the consequences of his or her plea, and ensure that a factual basis supported the plea. *Id.* at 757 & n.31. In particular, the advisory committee noted the purpose of the new factual-basis element was to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." Fed. R. Crim. P. 11 advisory committee's note to the 1966 amendment.

2. *Blockbusters:* McCarthy *and* Boykin. Following adoption of the 1966 amendment, the United States Supreme Court decided the case of *McCarthy v. United States*, 394 U.S. 459, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969). In *McCarthy*, the district court accepted a guilty plea in a case of tax evasion without inquiring whether the defendant understood the charges against him and without determining whether there was a factual basis for the claim. *Id.* at 461–62, 89 S. Ct. at 1168–69, 22 L. Ed. 2d at 422–23. Based on the violation of Rule 11 and in the exercise of its supervisory authority over federal courts, the Supreme Court reversed the conviction and allowed the defendant to plead anew. *Id.* at 471–72, 89 S. Ct. at 1173–74, 22 L. Ed. 2d at 428–29.

*McCarthy* rested solely upon the failure of the district court to explore the plea bargain with the defendant. *Id.* at 464 n.9, 89 S. Ct. at 1170 n.9, 22 L. Ed. 2d at 424 n.9. As a result, the *McCarthy* Court was not called upon to consider whether the record as a whole established a factual basis for the plea. Instead, the Court focused on the issue of voluntariness under the Due Process Clause of the Fifth Amendment. According to the Supreme Court, one of the purposes for the trial court's

personal interrogation of the defendant, as required by Rule 11, was to assist the trial court in ascertaining the voluntariness of the plea. *Id.* at 465–66, 89 S. Ct. at 1170–71, 22 L. Ed. 2d at 424–25. The *McCarthy* Court noted that under *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461, 1466 (1938), constitutional rights may be waived only when there is an "intentional relinquishment or abandonment of a known right or privilege." *McCarthy*, 394 U.S. at 466, 89 S. Ct. at 1170, 22 L. Ed. 2d at 425 (internal quotation marks omitted). Such waivers, according to the Court, cannot be considered truly voluntary "unless the defendant possesses an understanding of the law in relation to facts." *Id.* at 466, 89 S. Ct. at 1171, 22 L. Ed. 2d at 425. In particular, the Court noted that in this case the charge required a form of specific intent which the defendant had repeatedly disavowed. *Id.* at 470–71, 89 S. Ct. at 1173, 22 L. Ed. 2d at 427–28.

In addition, the *McCarthy* Court noted that a personal examination of the defendant by the trial court provides a more complete record to support the determination in a subsequent postconviction attack. *Id.* at 465–66, 89 S. Ct. at 1170–71, 22 L. Ed. 2d at 425. The Court observed that the record established at the time of the plea bargain is superior to that of a postconviction hearing, when disputed contentions of credibility and reliability of memory cannot be avoided. *Id.* at 470, 89 S. Ct. at 1173, 22 L. Ed. 2d at 427.

On the important question of remedy, the Supreme Court declared that the conviction should be vacated with the defendant allowed to plead anew. *Id.* at 468–69, 89 S. Ct. at 1172, 22 L. Ed. 2d at 427. Responding to a harmless error argument, the Court noted prejudice "inheres in a failure to comply with Rule 11, for noncompliance deprives the defendant of the Rule's procedural safeguards that are designed to

facilitate a more accurate determination of the voluntariness of his plea." *Id.* at 471–72, 89 S. Ct. at 1173–74, 22 L. Ed. 2d at 428. The Court further declared that "[i]t is . . . not too much to require" that a district court judge spend the few minutes of time necessary "to inform [defendants] of their rights and to determine whether they understand the action they are taking." *Id.* at 472, 89 S. Ct. at 1174, 22 L. Ed. 2d at 428–29. Clearly, the Supreme Court in *McCarthy* took a firm stand on mandatory compliance with the procedural requirements designed to ensure voluntariness of pleas in Rule 11.

While *McCarthy* was based on Rule 11 and the Supreme Court's supervisory powers over federal courts, the Supreme Court soon considered the constitutional implications of plea colloquies. Shortly after *McCarthy*, the Supreme Court decided *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). The defendant in *Boykin* was charged with five counts of common law robbery in Alabama state court. 395 U.S. at 239, 89 S. Ct. at 1710, 23 L. Ed. 2d at 277. The trial court did not ask the defendant any questions pertaining to his guilty plea, which the court accepted three days after it had appointed defense counsel. *Id.* The defendant was ultimately sentenced to death. *Id.* at 240, 89 S. Ct. at 1711, 23 L. Ed. 2d at 278.

The Supreme Court reversed. *Id.* at 244, 89 S. Ct. at 1713, 23 L. Ed. 2d at 280. According to the *Boykin* Court, the state trial court was required to establish on the record knowing relinquishment of three constitutional rights: the right to a jury trial, the right against self-incrimination, and the right to confront one's accusers. *Id.* at 243, 89 S. Ct. at 1712, 23 L. Ed. 2d at 279–80. Further, the Court declared that the trial court "on the record" should satisfy itself that "the defendant understands the nature of the charges, his right to a jury trial, the acts

sufficient to constitute the offenses for which he is charged and the permissible range of sentences." *Id.* at 244 n.7, 89 S. Ct. at 1713 n.7, 23 L. Ed. 2d at 280 n.7 (citation and internal quotation marks omitted). The Court noted that the three dissenting justices of the Alabama Supreme Court stated the law accurately when they concluded reversible error existed "because the record [did] not disclose that the defendant voluntarily and understandingly entered his pleas of guilty." *Id.* at 244, 89 S. Ct. at 1713, 23 L. Ed. 2d at 280 (citation and internal quotation marks omitted).

3. Henderson v. Morgan*: Application of* McCarthy *and* Boykin *to the factual-basis requirement.* The Supreme Court considered the failure of the district court to find a factual basis for the intent required in a guilty plea setting in *Henderson v. Morgan*, 426 U.S. 637, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976). In *Henderson,* the defendant pled guilty in New York state court to second-degree murder even though at the plea colloquy he did not admit that he had the required intent to murder the victim. *Id.* at 642–43, 96 S. Ct. at 2256–57, 49 L. Ed. 2d at 113. The defendant later filed a petition for a writ of habeas corpus in federal court. *Id.* at 639, 96 S. Ct. at 2255, 49 L. Ed. 2d at 111. The defendant maintained he would not have pled guilty if he had known intent to kill was a required element of second-degree murder. *Id.* at 643–44, 96 S. Ct. at 2257, 49 L. Ed. 2d at 114.

The Supreme Court held that the plea was invalid. *Id.* at 645–46, 96 S. Ct. at 2258, 49 L. Ed. 2d at 114–15. The Court distinguished between the objective factual basis for the plea and the subjective voluntariness of the defendant. *Id.* at 644–45 & n.12, 96 S. Ct. at 2257–58 & n.12, 49 L. Ed. 2d at 114–15 & n.12. There was ample evidence to support a second-degree murder charge, and the defendant's lawyers

had acted reasonably in encouraging their client to plead guilty. *Id.* Yet, as the Court pointed out, even assuming there was overwhelming evidence of guilt, the plea cannot support a judgment unless it is "voluntary in a constitutional sense." *Id.* at 644–45, 96 S. Ct. at 2257, 49 L. Ed. 2d at 114. Because the defendant did not know the necessary elements of the charge, the Court concluded it could not find that his plea to the unexplained charge of second-degree murder was voluntary. *Id.* at 645–47, 96 S. Ct. at 2258–59, 49 L. Ed. 2d at 114–16. Plainly, *Henderson* stands for the proposition that overwhelming evidence of guilt from an objective point of view does not necessarily mean the defendant subjectively made a knowing and voluntary waiver of his constitutional rights or made a knowing and voluntary plea.

4. *Remedial retreat:* Timmreck *and the 1983 amendment to Rule 11.* As time passed, the Supreme Court came to soften its inflexible enforcement of the procedural requirements of Rule 11. In *Timmreck*, the Court considered a collateral attack on a guilty plea in which the trial court failed to describe the mandatory special parole term required by the applicable statute. 441 U.S. at 782, 99 S. Ct. at 2086, 60 L. Ed. 2d at 637. The Court held that, at least on collateral attack, the defendant had the burden of showing not only that the district court violated Rule 11, but also that he was actually prejudiced. *Id.* at 783–85, 99 S. Ct. at 2087–88, 60 L. Ed. 2d at 638–39. The Court declared that the defendant failed to aver that he was either unaware of the penal provision or that, had such an appropriate disclosure been given by the trial court, he would have changed his plea. *Id.* at 784, 99 S. Ct. at 2087, 60 L. Ed. 2d at 638–39. As a result, the technical violation of Rule 11 did not entitle the defendant to collateral relief. *Id.* at 785, 99 S. Ct. at 2088, 60 L. Ed. 2d at 639.

Following *Timmreck,* the Supreme Court adopted two amendments to Rule 11. An amendment to Rule 11 in 1982 simply clarified that courts should advise defendants of any special parole term as part of the Rule 11 colloquy. *See* Fed. R. Crim. P. 11 advisory committee's note to the 1982 amendments. A more significant amendment related to "harmless error," however, was adopted in 1983. Specifically, the 1983 amendment provided, "A variance from the requirements of this rule is harmless error if it does not affect substantial rights." *See id.* R. 11(h); *id.* R. 11 advisory committee's note to the 1983 amendments.

While the 1983 amendment was obviously designed to impact remedies available under Rule 11, the intended scope of the change is not obvious from its general wording. The advisory committee's note to the amendment emphasized that the new provision "should *not* be read as supporting extreme or speculative harmless error claims or as, in effect, nullifying important Rule 11 safeguards." *Id.* R. 11 advisory committee's note to the 1983 amendment. Further, the advisory committee's note cautioned that the amendment "should not be read as an invitation to trial judges to take a more casual approach to Rule 11 proceedings." *Id.* These advisory committee notes provided some mood music, but little specific guidance regarding the proper interpretation of the new amendment.

5. *"Almost full circle":* Vonn, Dominguez Benitez, *and* Bradshaw. Subsequent United States Supreme Court cases, however, have suggested the scope of the 1983 amendment to Rule 11. In *United States v. Vonn,* 535 U.S. 55, 75, 122 S. Ct. 1043, 1055, 152 L. Ed. 2d 90, 109–10 (2002), the Court held that a reviewing court must look to the entire record, and not simply to the plea proceedings alone, in resolving Rule 11 issues. In *United States v. Dominguez Benitez,* 542 U.S. 74, 83, 124

S. Ct. 2333, 2340, 159 L. Ed. 2d 157, 168 (2004), the Court held that when the district court fails to advise a defendant that he cannot withdraw his plea if the sentencing court decides not to follow the plea bargain recommendation, in plain violation of Rule 11, the defendant must show "a reasonable probability that, but for the error, he would not have entered the plea."

Further, in *Bradshaw v. Stumpf*, 545 U.S. 175, 182–83, 125 S. Ct. 2398, 2405, 162 L. Ed. 2d 143, 152–53 (2005), the Court considered a challenge to a guilty plea by a defendant sentenced to death who claimed he did not understand the specific intent requirement for aggravated murder. The defendant's lawyer represented to the trial court at the plea hearing that he had explained the elements of the charge to the defendant. *Id.* at 183, 125 S. Ct. at 2405, 162 L. Ed. 2d 143 at 153. The defendant agreed this had occurred. *Id.* The Court concluded the representations of defense counsel, confirmed by the defendant, were sufficient to avoid vacation of the plea under Rule 11. *Id.* at 183–84, 125 S. Ct. at 2405–06, 162 L. Ed. 2d at 153–54.

*Vonn*, *Dominguez Benitez*, and *Bradshaw* demonstrate how far the current Supreme Court has moved from the inflexible remedial approach of *McCarthy* and *Boykin*. As noted by one commentator, "[t]he road traveled by the Supreme Court since *McCarthy* has come almost full circle." Julian A. Cook, III, *Crumbs from the Master's Table: The Supreme Court, Pro Se Defendants and the Federal Guilty Plea Process*, 81 Notre Dame L. Rev. 1895, 1910 (2006).

6. *Strands of constitutional analysis of factual-basis requirement.* While the United States Supreme Court's caselaw under Rule 11 has clearly evolved, the caselaw recognizes two distinct strands of constitutional analysis related to guilty pleas. The first strand, rooted in

the right to effective assistance of counsel under the Sixth Amendment, requires competent advice. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203, 210 (1985) (holding the Sixth Amendment applies in the plea-bargaining context). It is a responsibility of defense counsel to ensure that a client does not plead guilty to a charge for which there is no objective factual basis. It follows that no advice to plead guilty would be considered competent absent a showing of a factual basis to support the crimes to which the accused has elected to plead guilty. Where counsel falls short, a Sixth Amendment violation is present. The determination of whether there is a factual basis in the record to support the charge to which the defendant seeks to plead guilty is an objective inquiry that has nothing to do with the state of mind of the accused, but everything to do with the state of the record evidence. *Henderson*, 426 U.S. at 644 n.12, 96 S. Ct. at 2257 n.12, 49 L. Ed. 2d at 114 n.12.

The second strand, based on the Due Process Clauses of the Fifth and Fourteenth Amendments, requires the trial court to determine the defendant made a knowing and intelligent choice to waive constitutional rights, including the right to a jury trial, the right to protection against self-incrimination, the right to confront witnesses, and the right to plead guilty to the underlying crime. Even overwhelming objective evidence of guilt that amply satisfies the factual-basis requirement of Rule 11 will not save a conviction when the subjective requirements of due process have not been met. *See Dominguez Benitez*, 542 U.S. at 84 n.10, 124 S. Ct. at 2341 n.10, 159 L. Ed. 2d at 169 n.10. When a Fifth Amendment due process voluntariness claim based on a lack of factual basis is asserted, federal courts look on the record developed at the plea colloquy for evidence of the subjective state of mind of the defendant. *See, e.g., United States v. Adams*, 448 F.3d 492, 502 (2d Cir. 2006);

*United States v. Monzon*, 429 F.3d 1268, 1271–72 (9th Cir. 2005). Reference to the minutes of testimony is irrelevant for the purposes of the voluntariness inquiry if the record does not show that the minutes were reviewed and accepted as true on the record by the defendant.

**D. Regulation of Plea Bargaining in Iowa.**

1. *Introduction.* We now turn to an examination of Iowa law. As will be seen below, much of it is patterned after federal guilty plea jurisprudence. On the precise question posed by this case, namely, whether a defendant is entitled to vacation of a conviction and to plead anew when the district court has not identified the parts of the record that provide a factual basis for the plea, our cases have been less than clear or consistent.

Prior to 1969, there were some general restrictions on plea bargaining. For example, in *State v. Kellison*, 232 Iowa 9, 15, 4 N.W.2d 239, 242–43 (1942), we reversed a guilty plea on a manslaughter conviction when the plea was entered at noon, retained counsel sought to withdraw it two hours later, and a formal judgment was entered at three o'clock in the afternoon. We held that before a plea is entered, the defendant must in some manner be acquainted with the effect of such plea and the consequences of it. *Id.* at 14, 4 N.W.2d at 242. However, prior to 1969, there was no detailed framework for considering whether a plea satisfied this general requirement.

2. *Blockbuster:* State v. Sisco. The plea-bargaining landscape dramatically changed in 1969, however, with what one commentator called the "blockbuster" case of *State v. Sisco*, 169 N.W.2d 542 (Iowa 1969). *See* Arthur N. Bishop, *Guilty Pleas in the Northern Midwest*, 25 Drake L. Rev. 360, 363 (1975). In *Sisco*, we adopted the ABA Minimum Standards for Criminal Justice, Pleas of Guilty, sections 1.4 through 1.7.

169 N.W.2d at 548, 550. The ABA standards required that "the court should not enter a judgment upon such plea without making such inquiry as may satisfy it that there is a factual basis for the plea." *Id.* at 548 (internal quotation marks omitted). We noted that under the ABA standards, the "inquiry into the accuracy of the plea" was to be made on the "verbatim record of the proceedings at which the defendant enters a plea of guilty." *Id.* at 549–50 (internal quotation marks omitted). Relying on *McCarthy* and *Boykin,* we reasoned that because the record did not show that the defendant understood the charge, the legal consequences of the plea, or that it was voluntarily made, the judgment had to be set aside and the case remanded to the district court for further proceedings. *Id.* at 550–51. Although not specifically stated, *Sisco* considered the underlying constitutional difficulties with the plea process under a voluntariness, or due process, theory.[2]

*Sisco* set forth four basic requirements that must be met before a conviction could be entered on the basis of a guilty plea: (1) the defendant must understand the charge, (2) the defendant must be aware of the penal consequences of the plea, (3) the defendant must enter the plea voluntarily, and (4) before pronouncing judgment, the district court must determine whether there is a factual basis for the plea. *Id.* at 547–48. While the first three requirements were to be determined prior to accepting a plea, the factual-basis requirement was to be determined at any time prior to the entry of judgment. *Id.* Thus, *Sisco* differentiated between the requirements that a plea be entered voluntarily and with

---

[2]Defendants in plea-bargaining cases ordinarily cite the Sixth Amendment, and occasionally the Fifth Amendment, to the United States Constitution. In no plea-bargaining case to date has a defendant made a claim based upon the parallel provisions of the Iowa Constitution, article I, section 9 (due process) and article I, section 10 (right to counsel).

understanding from the requirement that the district court determine there was a factual basis for the plea.

3. Ryan v. Iowa State Penitentiary *and its progeny: application of* Sisco*'s factual-basis requirement.* In *Ryan v. Iowa State Penitentiary*, 218 N.W.2d 616 (1974), we considered a challenge to a guilty plea based upon the failure of the district court to establish a factual basis of the intent element for the crime of false drawing or uttering of checks. At the plea colloquy, the district court inquired of the defendant, "[Y]ou are telling me, in effect, 'I did the things I am charged with?'" *Id.* at 617. The defendant answered, "Yes, sir." *Id.* at 618.

We recognized that a factual basis to support the plea could be based upon "(1) inquiring of the defendant, (2) inquiring of the prosecutor, and (3) examining the presentence report." *Id.* at 619. Yet, notwithstanding these potential sources, we found the factual-basis determination flawed because the plea colloquy did not establish a factual basis for the charge of false drawing or uttering of a check. *Id.* It simply offered a conclusion. *Id.* Further, while the record showed the defendant had been read the county attorney's information prior to the plea colloquy, the document contained legalese that would "confound and confuse one unaccustomed to legal parlance." *Id.* Thus, the mere conclusory admitting of guilt at the plea colloquy, along with the prior recitation of the county attorney's information, was insufficient to support the plea. *Id.* In addition, we held a conclusory statement by the county attorney that he believed there was a factual basis was insufficient to support the plea. *Id.*

Much of *Ryan* sounds more like a subjective due process voluntariness claim than a claim of ineffective assistance based upon an objective lack of a factual basis to support the plea. For instance, we

noted that an understanding of the factual basis by the petitioner was essential to the plea. *Id.* Nonetheless, unlike in *Sisco*, the remedy in *Ryan* was a remand for a determination of whether there was a factual basis for the charge. *Id.* at 620. Thus, the remedy in *Ryan* was more consistent with a claim that counsel breached the duty to the accused by allowing him to plead on an insufficient record rather than a voluntariness claim as in *McCarthy* and *Boykin.*

Shortly after *Ryan,* we decided *State v. Hansen,* 221 N.W.2d 274 (1974), and *State v. Marsan,* 221 N.W.2d 278 (1974). In *Hansen,* we distinguished between a claim based on voluntariness and a claim based on a lack of factual basis. 221 N.W.2d at 276–77. With respect to the later claim, though we declared it was preferable that the factual basis be contained in the plea colloquy, we allowed the district court to find the existence of a factual basis by considering other sources in the record. *Id.* at 276. Similarly, in *Marsan,* we permitted a district court engaged in determining whether the factual basis was adequate to consider the colloquy, the information, and the minutes of testimony. *Id.* at 280. Accordingly, in *Hansen* and *Marsan* we determined that a district court may consider the minutes of testimony as a source for the factual basis in addition to the three sources identified in *Ryan.* Neither *Hansen* nor *Marsan,* however, addressed the question of whether the factual basis must be disclosed on the record at the plea hearing.

4. *Advance and retreat:* Brainard, Reeves, *the general assembly, and* Fluhr. In 1974, we decided *Brainard v. State,* 222 N.W.2d 711 (1974). This five-to-four decision was a landmark in our plea-bargaining jurisprudence. In *Brainard,* we considered an attack on guilty pleas to two charges of larceny of a motor vehicle entered at separate plea proceedings. *Id.* at 713. The defendant alleged the trial court in each

proceeding failed to personally address him to determine he understood the charge, the penal consequences of his plea, and to ensure there was a factual basis for the plea—three of the *Sisco* requirements. *Id.* Compliance with the remaining *Sisco* requirement, voluntariness, was only implicated to the extent it was affected by the courts' noncompliance with the first two *Sisco* requirements. *Id.* at 713, 718.

We adopted ABA Standard 4.2(a)(ii), Functions of the Trial Judge, which offered a checklist of topics to be covered in the plea-bargaining colloquy and required trial courts to ensure the defendant understood that by pleading guilty he or she would waive the privilege against self-incrimination, the right to a jury trial, and the right to confront his or her accusers. *Id.* at 717–18. We also generally emphasized the importance of the *Sisco* requirements. *Id.* at 713–14. We found the trial court's determination of the underlying factual basis lacking in both proceedings. In the first plea proceeding, we noted the trial court had essentially followed the same procedure condemned in *Ryan* by asking the defendant whether he denied that he was "specifically charged with the larceny of a motor vehicle, a certain Corvette, the property of Loren Jordahl" or that he was "alleged to have done this on the 19th day of August, 1971." *Id.* at 718–19. As to the second proceeding, we noted that the defendant had equivocated during the colloquy on the question of whether he had the necessary intent to support the plea to the crime of larceny of a motor vehicle. *Id.* at 721. Further, we could not determine that the trial court made the needed determination from any other source. *Id.*

*Brainard* certainly emphasized the need for a thorough and systematic plea colloquy that accomplished more than obtaining conclusory statements of guilt from defendants. We emphasized, "The

test of any guilty plea procedure is whether it establishes on the record that the guilty plea has been voluntarily and intelligently entered and that it has a factual basis." *Id.* at 722. We thus recognized the *Sisco* distinction between determining whether a plea was voluntarily and intelligently entered and whether there was a factual basis in the record, and at least implied that the factual basis, like voluntariness, should be determined on the record at the plea colloquy.

A year after *Brainard*, we decided *State v. Williams*, 224 N.W.2d 17 (Iowa 1974), and *State v. Greene*, 226 N.W.2d 829 (Iowa 1975). In these cases, we emphasized that in determining whether a factual basis existed, "[i]t is essential, whatever source is used, that the factual basis be identified and disclosed in the record." *Greene*, 226 N.W.2d at 831; *Williams*, 224 N.W.2d at 18. We further noted it would be preferable for the judge to ask the defendant, "What did you do?" *Greene*, 226 N.W.2d at 831; *Williams*, 224 N.W.2d at 18. The language of *Williams* and *Greene* suggests a district court should do more than simply state its conclusion on the record, but should also identify the parts of the record that support the finding.

Our caselaw took a new turn in *State v. Reaves*, 254 N.W.2d 488 (Iowa 1977). In *Reaves*, a narrow majority of this court held that even though the plea colloquy may have been deficient because the trial court failed to advise the defendant that intent is one of the essential elements of the crime of operating a motor vehicle without the owner's consent, that defect in the colloquy did not require reversal of the conviction when defense counsel assured the court the accused had been advised of and understood the *Sisco* requirements. *Id.* at 493. Although *Reaves* was a voluntariness case and did not involve a challenge to the factual basis of the plea, *Reaves* nonetheless tended to lessen the importance of dialogue

between the trial court and defendant during the plea colloquy. As noted by the dissent, *Reaves* marked a departure from the earlier teaching of *McCarthy* and *Sisco*. *Id.* at 502–03 (McCormick, J., dissenting).

Shortly before the *Reaves* decision, however, the general assembly enacted legislation that established a rule that is now contained in Iowa Rule of Criminal Procedure 2.8(2)(*b*). The rule itself is largely based on the federal counterpart. The new rule provided, in relevant part, " 'The court may refuse to accept a plea of guilty, and shall not accept such plea without first addressing the defendant personally and determining that the plea is made voluntarily and intelligently and has a factual basis.' " *Id.* at 512 (quoting Iowa R. Crim. P. 8(2) (1977), now rule 2.8(2)(*b*) as amended); *see also* 1977 Iowa Acts ch. 153, § 20.

The question arose as to the effect of the new legislation on the court's approach to guilty pleas—a question we took up in *State v. Fluhr*, 287 N.W.2d 857 (Iowa 1980). In a five-to-four decision, we held the new legislation embraced the approach of *Sisco* and *Brainard* and required an in-court colloquy. *Fluhr*, 287 N.W.2d at 863–64. We emphasized that the voluntariness requirement stems from the due process right that a waiver of constitutional rights must be made voluntarily, which requires that a plea be knowing and intelligently made. *Id.* at 863. We noted that the defendant's understanding of these matters involved a subjective concern, requiring the trial court to delve into the accused's state of mind, and that such an inquiry is best done on the record through a thorough personal colloquy between the court and the defendant as suggested in *Brainard. Id.* We noted the fear of the *Reaves* majority— that *Sisco* and *Brainard* would lead to excessive guilty plea attacks—had proved unwarranted and that a court's probing of the defendant's understanding of the meaning and consequences of his plea would

discourage rather than foster attacks. *Id.* at 864. Even so, we recognized that even *Sisco* stated not every minor omission should be considered fatal. *Id.* at 864. We stated, "Certainly a plea-taking error which raises no doubt as to the voluntariness or factual accuracy of the plea may be properly disregarded, provided the defendant is unable to prove prejudice."[3] *Id.*

5. *Common threads in factual-basis cases.* After *Fluhr*, our caselaw related to factual bases of guilty pleas continued its winding course. In *State v. Brooks*, 555 N.W.2d 446, 448–49 (Iowa 1996), we expansively suggested that in determining whether there was a factual basis in the record, we consider "the entire record before the district court" that "includes" statements made by the defendant during the plea colloquy. We made a similar broad statement in *State v. Carter*, 582 N.W.2d 164, 165–66 (Iowa 1998). In *Schminkey*, however, we declared that in factual basis cases, "the ultimate focus . . . is on the record before the district court at the time of the guilty plea proceedings." 597 N.W.2d at 787. The *Schminkey* formulation, however, did not unambiguously answer the question of whether the factual basis had to be specifically

---

[3]In *Fluhr*, the defendant pled guilty to third-degree theft, an aggravated misdemeanor. 287 N.W.2d at 859–60. The oral plea colloquy was virtually devoid of any indicia of compliance with rule 8(2)(*b*), now rule 2.8(2)(*b*) as amended, but the defendant had executed a written plea form, which purported to cover the rule's requirements. *Id.* at 859–60, 862. Ultimately, we held the trial court could not use the written plea form to satisfy the requirements of rule 8(2)(*b*). *Id.* at 864–65. A decade later, we overruled this aspect of *Fluhr* in *State v. Kirchoff*, 452 N.W.2d 801, 804–05 (1990), wherein we held a trial court did not have to personally address the defendant as to each of the rule 8(2)(*b*) requirements in cases involving guilty pleas to serious and aggravated misdemeanors if the court supplemented the in-court colloquy with a written plea form that otherwise satisfied the rule's requirements. *State v. Meron*, 675 N.W.2d 537, 543 (Iowa 2004). Because of the graver consequences resulting from a felony conviction, we explicitly declined to extend the rationale of *Kirchoff* to cases involving guilty pleas to felonies in *State v. Hook*, 623 N.W.2d 865, 869–70 (Iowa 2001), *abrogated on other grounds by State v. Barnes*, 652 N.W.2d 466, 468 (Iowa 2002) (per curiam).

identified at the plea hearing or whether it simply had to be in the record available to the district court at the time of the plea hearing.

We next decided *Keene,* in which we recognized the defendant did not claim his plea was not entered voluntarily and intelligently, but only that there was no factual basis to support the plea. 629 N.W.2d 362 n.2. *Keene* thus implicitly recognized the difference between a due process voluntariness claim and a claim of ineffective assistance of counsel based upon the failure of counsel to object to the entry of a plea without a factual basis in the record. The *Keene* court, however, continued to use the phrases "on the record" and "in the record" interchangeably in its analysis of the factual-basis inquiry. *Id.* at 366.

That brings us to the cases cited by the parties in this case. In *Philo*, the State argued the district court could rely on his personal knowledge of local speed limits to find a factual basis for a guilty plea. 697 N.W.2d at 485–86. We stated, " '[I]f the district judge finds it necessary to look to evidence other than the defendants' statements to establish the factual basis for the plea in any situation, these additional facts or evidence must be specifically articulated on the record.' " *Id.* (quoting *United States v. Wetterlin,* 583 F.2d 346, 353 (7th Cir. 1978)). In *Philo*, however, the defendant made sufficient admissions in the plea colloquy to support the guilty plea without reference to the extra-record evidence purportedly relied upon by the district court. *Id.*

6. *Remedial retreat:* State v. Straw. As early as *Sisco*, we had stated that minor omissions from the plea colloquy that did not affect substantial rights would not undermine the finality of criminal convictions. 169 N.W.2d at 551. Unlike some other states, where strict compliance was required, we adopted a substantial compliance approach. *Id.*

In 2006, we decided *Straw.* There, the district court failed to disclose to the defendant the fact that he could receive consecutive sentences for the crimes to which he was pleading guilty. 709 N.W.2d at 131, 134. Although the plea colloquy was flawed, we did not conclude the judgment in the case was necessarily invalid. Instead, we concluded the defendant had the burden to show he or she would not have pled guilty if the court had addressed the maximum punishment for his or her crimes. *Id.* at 137–39. We noted, among other things, that there was nothing in the record indicating whether Straw's trial counsel had advised him of the possibility of a consecutive sentence. *Id.* at 138. As a result, Straw was denied relief on direct appeal. We reaffirmed the approach of *Straw* in *State v. Bearse*, 748 N.W.2d 211, 219 (Iowa 2008). Our approach in *Straw* and *Bearse* was in many ways similar to developments in the federal caselaw after the 1983 amendment to Rule 11.

7. *Factual-basis cases after* Straw. In two post-*Straw* cases, we examined the record before the court to determine if a sufficient factual basis existed for the plea.[4] For instance, in *State v. Ortiz*, 789 N.W.2d 761, 763–64 (Iowa 2010), the district court asked the defendant whether he was armed with a dangerous weapon. The defendant responded, "Yes." *Id.* at 764. While the factual basis of this conclusion was not developed on the record at the time the plea was accepted, we proceeded to canvas the minutes of testimony to determine if there was a factual

---

[4]After *Straw*, we also decided *State v. Allen*, 708 N.W.2d 361 (Iowa 2006). In *Allen*, we held that the record before the district court demonstrated the defendant, as a matter of law, did not commit the crime for which she was charged. *Id.* at 368. In this situation, we ordered the conviction vacated and remanded the case back to the district court to begin anew. *Id.* at 369. *Allen* involves a case where the facts demonstrate that the crime was not committed and is thus materially different from this case.

basis. *Id.* at 768. We concluded, based on our review of the entire record, that there was a factual basis for each element of the offense. *Id.*

Similarly, in *State v. Rodriguez*, 804 N.W.2d 844 (2011), we considered a challenge to a guilty plea of reckless vehicular homicide. We recognized that the law required that the factual basis for Rodriguez's plea be established "in the record." *Id.* at 849. We looked not only to the plea colloquy, but to the rest of the record, including the minutes of testimony, to see whether sufficient facts were available to justify counsel's allowance of the plea and the court's acceptance of it. *Id.* at 850. We emphasized that *Rodriguez* had not challenged the sufficiency of the plea colloquy, which would have raised a due process voluntariness issue, but only the factual basis for the plea. *Id.* at 853.

**E. Resolution of the Issue Posed in This Case.** In this case, we address the apparent tension between *Philo* and its predecessors and *Oritz* and *Rodriguez.* For the reasons expressed below, we conclude the cases, for the most part, are reconcilable.

We begin by recognizing that our cases in other contexts involving "on the record" and "in the record" language have been somewhat inconsistent. For example, in *State v. Lawrence*, 344 N.W.2d 227, 229–30 (Iowa 1984), we held that the phrase "in writing and on the record" under the jury trial waiver provision of Iowa Rule of Criminal Procedure 16.1, now rule 2.17(1) as amended, did not require a reported proceeding in open court. We later backtracked, however, and in *State v. Liddell* held that "on the record" required an in-court proceeding, noting that "on the record" in the context of the jury waiver rule did not mean "in the file." 672 N.W.2d 805, 811–13 (Iowa 2003) (overruling *Lawrence*, 344 N.W.2d at 299).

Nonetheless, we reaffirm that under rule 2.8(2)(*b*), the district court is required to provide the factual basis supporting the plea on the record at the plea hearing. The notion that the factual determination was to be part of the verbatim proceeding at which the plea was accepted was embraced in *Sisco* and has never been abandoned. *Sisco*, 169 N.W.2d at 549–50 (adopting ABA Minimum Standard 1.7, requiring a verbatim record of the "proceedings at which the defendant enters a plea of guilty," and noting that the record should include the factual-basis inquiry (internal quotation marks omitted)). Our cases that stressed the need that the factual basis "must be identified and disclosed in the record" embraced the approach of *Sisco*. *See Greene*, 226 N.W.2d at 831; *Williams*, 224 N.W.2d at 18. We also note that the legislature's 1977 enactment of rule 8(2)(*b*), now rule 2.8(2)(*b*) as amended, required a trial court to determine the factual basis prior to accepting the plea, which at least implied that the factual-basis determination was to be made in tandem with the voluntariness determinations required by the rule.

We also note the on-the-record determination at the plea hearing also serves important constitutional goals. An on-the-record discussion during the plea colloquy between the court and the defendant enhances the ability of the district court to determine the various due process voluntariness issues which turn on the state of mind of the defendant at the time the plea is made. *State v. Randall*, 258 N.W.2d 359, 361 (Iowa 1977) (noting the factual-basis requirement is designed to complement the defendant's right to counsel under the Sixth Amendment and to ensure the plea is voluntary); *Reaves*, 254 N.W.2d at 491 (noting the first three *Sisco* requirements are subjective states of mind). As the advisory committee's note to Federal Rule of Criminal Procedure 11 stated more than fifty years ago, the district court's personal review of the factual

basis with the defendant is designed to protect a defendant who understands the charge, but who may not realize that his or her conduct does not actually fall within it. Fed. R. Crim. P. 11 advisory committee's note to the 1966 amendment. A defendant's plea is not truly voluntary "unless the defendant possesses an understanding of the law in relation to facts." *McCarthy*, 394 U.S. at 466, 89 S. Ct. at 1171, 22 L. Ed. 2d at 425; *Sisco*, 169 N.W.2d at 546.

The requirement of rule 2.8(2)(*b*) that the factual basis of the plea be stated on the record at the plea hearing, however, does not entitle Finney to relief because of the narrow nature of his claim. Finney makes no claim in this direct appeal that his plea was involuntary under the Due Process Clause of either the Fourteenth Amendment or article I, section 9 of the Iowa Constitution.[5] The distinction between a voluntariness claim and a claim based upon the lack of a factual basis was recognized in *Sisco* and has been reiterated in our caselaw. *See Sisco*, 169 N.W.2d at 550; *see also Rodriguez*, 804 N.W.2d at 853; *Keene*, 629 N.W.2d at 362 n.2; *Fluhr*, 287 N.W.2d at 863; *Hansen*, 221 N.W.2d at 276–77; *Ryan*, 218 N.W.2d at 619. As a result, this case is distinctly different than, for instance, *McCarthy*, *Boykin*, or *Henderson.*

On a claim that a plea bargain is invalid because of a lack of accuracy on the factual-basis issue, the entire record before the district court may be examined. That is the teaching of *Ortiz* and *Rodriguez*, and it is consistent with the notion of *Vonn* and *Stumpf* under Federal Rule of Criminal Procedure 11 as well as *Straw* and *Bearse* under Iowa Rule of Criminal Procedure 2.8(2)(*b*) that insubstantial errors should not entitle

---

[5]We do not address the merits of any claim based on due process voluntariness that might be asserted in a postconviction relief action.

a defendant to relief. Recourse to the entire record is appropriate because, unlike a claim of due process involuntariness, the relevant inquiry for purposes of determining the Sixth Amendment claim presented by Finney does not involve an examination of his subjective state of mind at the time the trial court accepted the plea, but instead involves an examination of whether counsel performed poorly by allowing Finney to plead guilty to a crime for which there was no objective factual basis in the record. The failure of the district court in this case to explain on the record the evidence supporting his finding of a factual basis is thus an omission unrelated to the substantive claim being made. *See Fluhr*, 287 N.W.2d at 864 (noting plea-taking error which raises no doubt as to factual accuracy may be properly disregarded, provided defendant is unable to prove prejudice); *Sisco*, 169 N.W.2d at 551 (requiring substantial compliance).

Once we look to the entire record, we have little difficulty in concluding there was an adequate factual basis to support Finney's guilty plea to the charge of attempted murder. The minutes of testimony provide evidence that Finney was jealous of Harker's associations with other men, that he retrieved a loaded shotgun after seeing Harker with another man, that he went to Harker's residence, that he argued with Harker about Shimmin and indicated he knew Shimmin was in the bathroom, that he fired through the bathroom door, and that, when Harker turned to flee from the house, he shot her in the back. The minutes of testimony further reveal that Finney had a history of violence toward Harker and had previously threatened to kill her. Our cases do not require that the district court have before it evidence that the crime was committed beyond a reasonable doubt, but only that there be a factual basis to support the charge. *Ortiz*, 789 N.W.2d at 768; *Keane*,

630 N.W.2d at 581. Clearly, the minutes of testimony provide sufficient evidence from which a jury could infer that Finney had the requisite intent when he "shot Patty" to support a charge of attempted murder. *See, e.g., State v. Jesperson*, 360 N.W.2d 805, 807 (Iowa 1985) (intent may be inferred from circumstances).

Nothing in this opinion, however, should be construed as an invitation to district courts to short circuit rule 2.8(2)(*b*) when taking a guilty plea. The taking of a guilty plea, though often appearing routine and even ritualistic, has the same consequence for the defendant as a criminal trial. The plea colloquy is an important backstop to help ensure that defendants who might not be guilty do not end up with wrongful convictions as the result of a flawed plea-bargaining process. In addition, a thorough record at the time of the taking of a guilty plea lessens the likelihood of later challenges and, if those challenges do occur, provides an important contemporary record to assist reviewing courts in evaluating the merits of such claims. *Fluhr*, 287 N.W.2d at 864; *Brainard*, 222 N.W.2d at 713–14; *Hansen*, 221 N.W.2d at 278; *Ryan*, 218 N.W.2d at 619. While checklists such as that referenced in *Hansen, see* 221 N.W.2d at 278 (citing *United States v. Cody*, 438 F.2d 287, 290 (8th Cir. 1971)), are not mandatory and must be adapted to each particular case, they can provide an important aid to the implementation of the rule 2.8(2)(*b*) requirements, *Brainard*, 222 N.W.2d at 721–22.

### V. Illegal Sentence.

During the plea colloquy, when the district court asked Finney if he understood the mandatory minimum was eighty-five percent, Finney responded affirmatively. Based on this interaction, Finney claims the district court erroneously sentenced him to an eighty-five percent

mandatory minimum sentence on his twenty-five-year prison term for attempted murder. The record reveals, however, that the court correctly sentenced Finney to twenty-five years. *See* Iowa Code § 902.9(2). The district court's order did not specifically indicate any applicable mandatory minimum or when Finney might be eligible for parole. It is a lawful sentence.

Although it is doubtful whether the issue has been preserved, Finney further asserts that the trial court failed to correctly state the mandatory minimum sentence for attempted murder during the plea colloquy and that his conviction must be reversed. In fact, Finney's twenty-five-year term is subject to a seventy percent minimum before he is eligible for consideration for work release or parole. *Id.* § 902.12(2). In addition, Finney would be eligible for discharge after serving eighty-five percent of his sentence assuming he accumulated the maximum amount of earned time. *Id.* § 903A.2(1)(*b*); *see also Lowery v. State*, 822 N.W.2d 739, 741–42 (Iowa 2012) (explaining the interaction between sections 902.12 and 903A.2). Thus the district court's statement was at best ambiguous. At worst, it was incorrect. In any event, it does not provide a basis for relief on direct appeal. *Bearse*, 748 N.W.2d at 219; *Straw*, 709 N.W.2d at 138. There is nothing in the record indicating Finney would have turned down the plea deal if he had known the mandatory minimum was seventy percent instead of eighty-five percent. We therefore preserve Finney's claim for postconviction relief.

## VI. Ineffectiveness Based Upon Failure to Investigate.

Finney claims his counsel did little to advance his defense and that, as a result, he received ineffective assistance. Plainly, this is the type of claim that must await development of a factual record in a

potential postconviction relief proceeding. *State v. Utter*, 803 N.W.2d 647, 651 (Iowa 2011). We do not address it now.

## VII. Conclusion.

For the above reasons, the decision of the court of appeals is vacated and the judgment of the district court is affirmed.

**COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.**