# IN THE COURT OF APPEALS OF IOWA

No. 13-1469
Filed July 16, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CLIFFORD ORRIS JACKSON JR.,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Arthur E. Gamble, Judge.

Clifford Orris Jackson Jr. appeals his judgment and sentence for robbery in the second degree and willful injury. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, John P. Sarcone, County Attorney, Michael T. Hunter, Assistant County Attorney, and Joseph Williams, Student Legal Intern, for appellee.

Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**DOYLE, J.**

Clifford Jackson appeals, challenging the factual basis for his guilty plea to the charges of robbery in the second degree and willful injury, in violation of Iowa Code sections 711.1, 711.3, and 708.4(2) (2013). We affirm.

## I. *Background Facts and Proceedings*

As described by Jackson, "The charges in this case arose from essentially a drug deal gone bad." The minutes of testimony reveal the following facts.

On September 10, 2012, Jackson called his cousin, Jerrin Crowell, to inquire about drug contacts. Crowell agreed to set up a deal for Jackson to purchase $400 of marijuana from Crowell's friend, Joshua Pugh. Later that day, Crowell picked up his girlfriend, Maria Sanchez, and drove to Des Moines to pick up Jackson and Jackson's friend. Crowell then drove the group to the prearranged meeting spot for the drug deal—a Kum & Go convenience store in West Des Moines—and parked his vehicle next to Pugh's vehicle in the parking lot. Crowell advised that Pugh did not want anyone else in the vehicle during the drug transaction, and Crowell then left to make the deal.

Crowell entered Pugh's vehicle and sat in the front passenger seat. He told Pugh that his cousin wanted to take a look at the drugs before fronting the money. Pugh opened the bag of drugs and pulled off a "bud" for Crowell to show to Jackson. Suddenly, the driver's side door of Pugh's vehicle flew open, and Pugh saw an assailant pointing a revolver at Pugh's head, while yelling, "Give it up!" Pugh saw a second assailant holding a handgun and giving similar commands. Crowell got scared and exited Pugh's vehicle to try to calm the situation.

The second assailant waved his handgun at Crowell when he got out and ordered, "You need to back us up." To prove he was serious, the first assailant showed Pugh that his gun was loaded and then pointed it back at Pugh's head.

Pugh began arguing with the assailants and warned them he was going to call the police. When Pugh reached for his cellphone, the first assailant fired a shot at Pugh with his revolver, hitting Pugh in the left shoulder. The bullet went through Pugh's chest and exited his right shoulder.

Meanwhile, Sanchez was still in Crowell's vehicle, unable to exit the front passenger side because the assailants were blocking her way. Crowell retreated to the rear of the driver's side of his vehicle to help her get out. Sanchez was able to escape through the driver's side door. After hearing the gunshot, both Crowell and Sanchez hurried toward the back of the convenience store. Pugh managed to get out of his vehicle and walk inside the Kum & Go.

The assailants began chasing Crowell and Sanchez on foot. According to Crowell, the assailant with the revolver caught up with him, urged him to "come on," and then grabbed onto Crowell's sweatshirt. Crowell refused to go with them, at which time the assailant with the handgun demanded the keys to Crowell's vehicle. When Crowell refused, the assailant pointed his handgun at Crowell and said, "I'm not playing. I want the keys." Sanchez yelled at Crowell to just give them up, and Crowell tossed the keys to them.

The assailants ran back to the Kum & Go parking lot and drove off with Crowell's vehicle. Crowell later recognized the two assailants as Jackson, with the revolver, and Jackson's friend, with the handgun.

Meanwhile, Pugh spoke with the Kum & Go store clerk, who called 911. Pugh went back outside to retrieve his bag of drugs from inside his vehicle, hid the drugs by a dumpster, and went back inside the Kum & Go. Police arrived, and Pugh was taken to the hospital.

Police observed blood in and around the Kum & Go, as well as in Pugh's vehicle. A live round was located on the ground near the driver's side of Pugh's vehicle, and a discharged round was located on the front passenger seat of Pugh's vehicle. The bag of drugs, identified as marijuana, was found behind the Kum & Go.

During interviews with police, Pugh initially denied owning the drugs but later admitted he was involved in a drug transaction. Pugh pointed out Jackson from a photo array and identified him as the shooter, the first assailant with the revolver. Pugh pointed out Crowell from another photo array and identified him as the person who had set up the drug deal.

Sometime after the shooting, Jackson called Crowell and told him where his vehicle was located. The vehicle, which was registered to Crowell's mother, was found in the parking lot of the apartment complex where Jackson's sister lived in Des Moines.

The State filed a trial information charging Jackson with one count of attempted murder, a class "B" felony, and two counts of first-degree robbery, class "B" felonies. The State subsequently filed an amended trial information charging Jackson with two counts of second-degree robbery, class "C" felonies, and one count of willful injury causing bodily injury, a class "D" felony. Jackson

entered a guilty plea pursuant to a plea agreement to the amended charges of two counts of second-degree robbery and one count of willful injury.

At the plea hearing, the district court asked Jackson to describe the incident in his own words. Jackson admitted he set up a drug deal with Pugh and that he and a man named Marcus had both "pulled a weapon" on Pugh. Jackson stated his weapon was not loaded and Marcus was the person who shot Pugh. Jackson admitted he pulled his weapon on Pugh with the intent of "getting the drugs." Jackson further admitted in an attempt to escape from the scene, Marcus pointed a weapon at Crowell "to give him his keys" to Crowell's vehicle. Jackson admitted he also used his weapon to scare Crowell into giving them the keys. Jackson stated he and Marcus got into Crowell's vehicle and Marcus drove them away.

The district court accepted Jackson's plea, entered judgment, and sentenced him to a term of imprisonment not exceeding ten years on each of the robbery convictions, with a seventy percent mandatory minimum, and a term of imprisonment not exceeding five years on the willful injury conviction, to run consecutively for an aggregate sentence of twenty-five years. Jackson now appeals.

## II. Error Preservation and Standard of Review

Jackson challenges his conviction and sentence, claiming the record does not establish a factual basis for his guilty plea. Jackson's failure to timely file a motion in arrest of judgment after entry of his guilty plea bars a direct appeal of his conviction. See Iowa R. Crim. P. 2.24(3)(a). However, Jackson also challenges the guilty plea through an ineffective-assistance-of-counsel claim.

*See State v. Finney*, 834 N.W.2d 46, 49 (Iowa 2013). When a defendant claims trial counsel was ineffective for permitting a guilty plea to a charge not supported by a factual basis, our review is de novo. *Id.*

### III.   Discussion

To prevail on his claim of ineffective assistance of counsel, Jackson must show counsel (1) failed to perform an essential duty and (2) prejudice resulted. *See State v. Fountain*, 786 N.W.2d 260, 265-66 (Iowa 2010). "Although claims of ineffective assistance of counsel are generally preserved for postconviction relief proceedings, we will consider such claims on direct appeal where the record is adequate." *State v. Bearse*, 748 N.W.2d 211, 214 (Iowa 2008). Neither party suggests we preserve Jackson's ineffective-assistance claim for a postconviction proceeding, and we find the record adequate to address the claim on direct appeal.

It is axiomatic that a trial court may not accept a guilty plea without first determining that the plea has a factual basis and that factual basis must be disclosed in the record. *Finney*, 834 N.W.2d at 61-62; *see also* Iowa R. Crim. P. 2.8(2)(b). When trial counsel permits a defendant to plead guilty and waive the right to file a motion in arrest of judgment absent a factual basis to support the guilty plea, counsel violates an essential duty, and prejudice is presumed. *State v. Ortiz*, 789 N.W.2d 761, 764-65 (Iowa 2010).

Accordingly, in this case, if a factual basis existed in the record to support Jackson's guilty plea, counsel was not ineffective for allowing him to plead guilty and in failing to file a motion in arrest of judgment; if a factual basis does not exist, counsel was ineffective. We determine whether a factual basis existed by

considering "the entire record before the district court" at the guilty plea hearing.[1]

*Finney*, 834 N.W.2d at 62.

Jackson contends there is no factual basis to support his guilty plea to second-degree robbery in Count II, involving the robbery of Crowell's vehicle, in violation of Iowa Code sections 711.1 and 711.3.[2] As section 711.1(1) provides:

> A person commits a robbery when, having the intent to commit a theft, the person does any of the following acts to assist or further the commission of the intended theft or the person's escape from the scene thereof with or without the stolen property:
> a. Commits an assault upon another.
> b. Threatens another with or purposely puts another in fear of immediate serious injury.
> c. Threatens to commit immediately any forcible felony.

If no dangerous weapon is involved while perpetrating the robbery, the offense is second-degree robbery. *See* Iowa Code §§ 711.2, 711.3.

Jackson also contends there is no factual basis to support his guilty plea to willful injury in Count III, involving the shooting of Pugh, in violation of Iowa Code section 708.4.[3] As that section provides:

> Any person who does an act which is not justified and which is intended to cause serious injury to another commits willful injury, which is punishable as follows:
> . . . .

---

[1] Jackson does not challenge the factual basis to support his guilty plea to second-degree robbery in Count I. Count I of the amended trial information charged Jackson with second-degree robbery, alleging Jackson "by intending to commit a theft, and to assist or further the intended theft, or the defendant's escape from scene, committed an assault upon Joshua Pugh, or threatens with or purposely put Joshua Pugh in fear of immediate serious injury."

[2] Specifically, Count II of the amended trial information charged Jackson with second-degree robbery, alleging Jackson "by intending to commit a theft, and to assist or further the intended theft, or the defendant's escape from scene committed an assault upon Jerrin Crowell, or threatens with or purposely put Jerrin Crowell in fear of immediate serious injury."

[3] Specifically, Count III of the amended trial information charged Jackson with willful injury, alleging Jackson "by committing an assault upon Joshua Pugh, while having the intent to inflict serious injury, and thereby causing bodily injury."

2. A class "D" felony, if the person causes bodily injury to another.

*Id.* § 708.4.

The State charged Jackson with the crimes as a principal as well as under the theories of joint criminal conduct and aiding and abetting. Section 703.2, criminalizing joint criminal conduct, provides:

> When two or more persons, acting in concert, knowingly participate in a public offense, each is responsible for the acts of the other done in furtherance of the commission of the offense or escape therefrom, and each person's guilt will be the same as that of the person so acting, unless the act was one which the person could not reasonably expect to be done in the furtherance of the commission of the offense.

Section 703.1, criminalizing aiding and abetting, provides:

> All persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aid and abet its commission, shall be charged, tried and punished as principals. The guilt of a person who aids and abets the commission of a crime must be determined upon the facts which show the part the person had in it, and does not depend upon the degree of another person's guilt.

Jackson claims although he was charged under all three theories (principal, joint criminal conduct, and aiding and abetting), "it is clear from the record [he] was entering his guilty pleas only under the theory of aiding and abetting." Jackson contends the record at the plea colloquy does not establish a factual basis for these crimes under the theory of aiding and abetting.

The State counters, claiming this court "is not limited to the colloquy between the trial court and the defendant when determining whether the evidence supports a factual basis, and if evidence exists that would show a factual basis under any theory than the plea is acceptable." We agree. "Our cases do not require that the district court have before it evidence that the crime

was committed beyond a reasonable doubt, but only that there be a factual basis to support the charge." *Finney*, 834 N.W.2d at 62; *see also Ortiz*, 789 N.W.2d at 768 ("[W]e need only be satisfied that the facts support the crime."). Here, the record before the court arguably provided a factual basis to support the charges against Jackson as a principal, and without question as an aider and abettor.

As Jackson concedes, his account of the events differed from the facts in the minutes of testimony "only insofar as [the] identity of the shooter." Regardless of whether Jackson threatened Pugh with his weapon or actually fired the shot that struck Pugh, Jackson agreed he acted with the other assailant in doing so. And Jackson takes no issue with the evidence before the court concerning the pursuit of Crowell and Sanchez and the threatening of Crowell to relinquish his keys, and states his account is "consistent with what the minutes show."

We conclude there was a factual basis in the record for the crimes at issue. In addition to Jackson's admissions at the plea hearing, the minutes offer a factual basis for the crimes. Therefore, Jackson's counsel did not render ineffective assistance by allowing him to plead guilty to those offenses. We affirm Jackson's judgment and sentence.

**AFFIRMED.**