## IN THE COURT OF APPEALS OF IOWA

No. 14-0549
Filed December 10, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TAMMY JENE WRIGHT,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Polk County, Karen A. Romano,

Judge.


        Tammy Wright appeals following the district court's sentencing on her plea

of guilty to one count of second-degree robbery.  **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Theresa R. Wilson,

Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney

General, John P. Sarcone, County Attorney, and Nan M. Horvat and Olu Salami,

Assistant County Attorneys, for appellee.


        Considered by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**POTTERFIELD, J.**

Tammy Wright appeals following the district court's sentencing on her plea of guilty to one count of second-degree robbery.

## I. Factual and Procedural Background

On July 17, 2013, Wright drove her adult son to a local pharmacy for the purpose of obtaining pain medication by placing the pharmacy employees in fear. She dropped her son off in front of the pharmacy. He entered the store wearing a hooded sweatshirt and latex gloves and gave the clerk a note which read, "Oxycodone 15s 30s quickly & quietly no one gets hurt." The clerk complied, and the son left the store. Wright was waiting to pick him up after the robbery was completed.

On September 23, 2013, Wright again drove her son to the same pharmacy for the same purpose. The son entered the pharmacy wearing a hooded sweatshirt, gloves, and a mask. He announced, "I told you I'd be back." He handed the clerk another note which read, "Oxycodone 30 and 15. Rush." The clerk again complied, and the son left the store. Again, Wright was waiting to pick him up.

On November 11, 2013, the State charged Wright by trial information with two counts of aiding and abetting second-degree robbery,[1] one count for each

---

[1] "A person commits a robbery when, having the intent to commit a theft, the person . . . to assist or further the commission of the intended theft or the person's escape from the scene thereof . . . [t]hreatens another with or purposely puts another in fear of immediate serious injury." Iowa Code § 711.1 (2013). "All persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aid and abet its commission, shall be charged, tried and punished as principals." *Id.* § 703.1. "Robbery in the second degree is a class 'C' felony." *Id.* § 711.3.

incident in July and September. Pursuant to a plea negotiation, Wright agreed to plead guilty to the second count in exchange for the dismissal of the first.

On February 11, 2014, the district court conducted a colloquy and accepted Wright's guilty plea. The court explicitly informed Wright of the elements of the offense and the mandatory sentence of incarceration. On March 26, 2014, the district court sentenced Wright to the mandatory indeterminate ten-year sentence under Iowa Code sections 902.9(1)(d), 702.11, and 907.3.[2] Pursuant to Iowa Code section 902.12(5), the court imposed the mandatory minimum sentence of seven years, during which Wright is not eligible for parole or work release.[3]

Wright appeals. She claims she suffered ineffective assistance of counsel during the negotiations and entry of her guilty plea. She also claims her sentence is an unconstitutionally cruel and unusual punishment.

## II. Standard and Scope of Review

We review ineffective-assistance-of-counsel claims de novo. *State v. Finney*, 834 N.W.2d 46, 49 (Iowa 2013). We review claims of cruel and unusual punishment, in violation of the United States Constitution and the Iowa Constitution, de novo. *State v. Bruegger*, 773 N.W.2d 862, 869 (Iowa 2009).

---

[2] "A class 'C' felon, not an habitual offender, shall be confined for no more than ten years . . . ." Iowa Code § 902.9(d). "A 'forcible felony' is any felonious . . . robbery . . . ." *Id.* § 702.11. A trial court's discretion to defer judgment or defer or suspend a sentence "does not apply to a forcible felony." *Id.* § 907.3.

[3] "A person serving a sentence for conviction of [second-degree robbery] . . . shall be denied parole or work release unless the person has served at least seven-tenths of the maximum term of the person's sentence . . . ." Iowa Code § 902.12.

**III. Discussion**

A. Guilty Plea

"Although we normally preserve ineffective-assistance claims for postconviction-relief actions, we will address such claims on direct appeal when the record is sufficient to permit a ruling." *Finney*, 834 N.W.2d at 49. We find this record is sufficient to address the issue on direct appeal.

Wright must show that (1) counsel breached an essential duty and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). We begin by presuming counsel rendered competent representation, and the challenging defendant bears the burden of overcoming that presumption. *See Millam v. State*, 745 N.W.2d 719, 721 (Iowa 2008).

Even if Wright overcomes our presumption that counsel did not breach an essential duty, she must then satisfy the prejudice requirement by demonstrating "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see State v. Reynolds*, 746 N.W.2d 837, 845 (Iowa 2008). If either prong is not satisfied, we will reject the ineffective-assistance claim. *Anfinson v. State*, 758 N.W.2d 496, 499 (Iowa 2008).

Wright claims her counsel was required either to prevent her from pleading guilty or to move in arrest of judgment prior to sentencing. She believes these steps were required of her counsel for two reasons: first, there was not a

factual basis to support her plea of guilty; second, the plea was not voluntarily made.[4]

"The law requires that the factual basis for [a guilty] plea be disclosed in the record." *State v. Rodriguez*, 804 N.W.2d 844, 849 (Iowa 2011). Each element of the offense must be supported. *State v. Ortiz*, 789 N.W.2d 761, 768 (Iowa 2010). However, "[o]ur cases do not require . . . evidence that the crime was committed beyond a reasonable doubt, but only that there be a factual basis to support the charge." *Finney*, 834 N.W.2d at 62.

Wright argues one essential element of the crime is not supported by the record: her son's appearance and threatening note placed the employees of the pharmacy in fear of immediate serious injury.[5] We disagree. The record shows during the first robbery, Wright's son gave the victims a note which read, "Oxycodone 15s 30s quickly & quietly no one gets hurt." When they returned and perpetrated the second robbery, the son—wearing a hooded sweatshirt, gloves, and a mask—told the victims, "I told you I'd be back." The implication clearly intended by Wright's son in addressing the victims during both incidences is that he would seriously injure the victims if they failed to comply.[6]

---

[4] "The court . . . shall not accept a plea of guilty without first determining that the plea is made voluntarily and intelligently and has a factual basis." Iowa R. Crim. P. 2.8(b).

[5] The relevant statute reads: "A person commits a robbery when, having the intent to commit a theft, the person . . . to assist or further the commission of the intended theft . . . [t]hreatens another with or purposely puts another in fear of immediate serious injury." Iowa Code § 711.1(b).

[6] An inference may stand as a sufficient factual basis. *See State v. Heard*, 636 N.W.2d 227, 232 (Iowa 2001) (holding a fact finder may infer the necessary elements of robbery by placing another in fear of injury from both verbal and nonverbal actions). We are not persuaded by Wright's argument that *Heard*'s use of inference does not apply here. As in *Heard*, a robber in disguise entered a place of business and demanded an employee hand over money or drugs. The *Heard* court contemplates the evidentiary value of inferences derived from a robber's demand of compliance from the victim. *Id.* at 231–32.

There is a sufficient factual basis for Wright's guilty plea. Her counsel therefore was under no duty to prevent her from pleading guilty or to move in arrest of judgment.

Wright argues her plea was involuntary because the trial information was deficient. The trial information cited to Iowa Code section 711.1, alleged the victims were placed in fear, but failed to include the phrase "immediate serious injury" from the statute. Based on her perceived deficiency in the State's charge, Wright asserts she did not realize "her conduct did not actually fall within the crime charge[d]" and she did not have "an understanding of the law in relation to the facts."

However, the trial information was sufficient to charge Wright with the crime. "Iowa courts consider both the . . . information and the minutes filed when determining the adequacy of the allegations to apprise the accused of the crime charged."[7] *State v. Grice*, 515 N.W.2d 20, 23 (Iowa 1994). The minutes of testimony contain statements by Eric and Libby VanHeukelom, the owners of the pharmacy, and Kelly Gunderson, one of their employees. The VanHeukeloms were present for both robberies and would testify "that they were in fear of their physical safety and felt they had no choice but to turn over the narcotics."

---

*Heard* does not limit the inferential value of the act of demanding compliance to assault. *See id.*

[7] We recognize our supreme court has held, "Reference to the minutes of testimony is irrelevant for the purposes of the voluntariness inquiry if the record does not show that the minutes were reviewed and accepted as true on the record by the defendant." *Finney*, 834 N.W.2d at 55. However, in our analysis, we do not use the minutes to establish the voluntary nature of Wright's plea. We refer to the minutes to establish the crime was properly charged, the charge matched Wright's conduct, and the State provided adequate notice to Wright of both the law and the facts.

Gunderson, who was present during the July robbery, would testify "that she was in fear of immediate serious injury to herself or her colleagues."

Taken together, the two charges included in the trial information and the minutes of testimony properly "apprise the accused of the crime charged." *Id.* Wright's conduct did fall within the crime charged, so she may not rely on an alleged deficiency in the charging documents to claim she was unaware the crime included the element that the victims were placed in fear of serious injury.

Her claim that she did not voluntarily plead guilty is further belied by the record: there is a factual basis for the victims' fear of "immediate serious injury," and such injury was expressly discussed prior to the district court's acceptance of the plea. Wright's counsel included the statutory language at the outset of his statements to the court,[8] and Wright herself admitted that her son's actions would have put the victims "in fear of serious injury."[9] Based on the sufficient factual basis for the charge in this case, the district court properly found Wright "possesse[d] an understanding of the law in relation to facts." *See Finney*, 834 N.W.2d at 61. Based on the record of the plea colloquy, Wright's subjective state of mind renders her guilty plea knowing and voluntary. *See id.* at 55.

---

[8] Wright's counsel stated to the court:
> [Wright] would acknowledge that on or about September 23, 2013, while in Polk County, Iowa, she did aid and abet her son, her co-defendant, in the commission of second degree robbery, that she did drive her son to a Medicap pharmacy . . . knowing that her son would go into the pharmacy while having the specific intent to commit a theft and that during the commission of this theft, he did don guise and place the employees at the Medicap pharmacy in fear of immediate serious injury.

[9] The plea colloquy included the following exchange between the court and Wright:
> Q: Would you agree that by going in, trying to disguise himself and demanding prescription medication, not paying for it from the Medicap employees would have placed them in fear of serious injury?
> A: Yes.

Because Wright's guilty plea is supported by a factual basis and because she pleaded voluntarily, her counsel was under no duty to prevent her from doing so or to move in arrest of judgment. "[C]ounsel has no duty to raise an issue that has no merit." *State v. Dudley*, 766 N.W.2d 606, 620 (Iowa 2009). Wright has not met her burden to show a breach of an essential duty by her counsel and is therefore not entitled to the corresponding relief.

B. Sentence

Both the United States Constitution and the Iowa Constitution prohibit the infliction of cruel and unusual punishment. *See* U.S. Const. amend. VIII; Iowa Const. art. 1, § 17. Wright contends her ten-year sentence coupled with a seventy-percent mandatory minimum is cruel and unusual as applied to her unique circumstances.[10]

For a sentence of years to be considered cruel and unusual, it must be grossly disproportionate to the crime for which it is imposed.[11] *Bruegger*, 773 N.W.2d at 873 (citing *Rummel v. Estelle*, 445 U.S. 263, 271 (1980)). "[A] sentence for a term of years within the bounds authorized by statute is not likely to be 'grossly disproportionate' . . . ." *Id.* (citing *Ewing v. California*, 538 U.S. 11 (2003); *Harmelin v. Michigan*, 501 U.S. 957 (1991); *Solem v. Helm*, 463 U.S. 227

---

[10] "Under an as-applied attack, a criminal statute imposing a certain sentence is not facially invalid in all circumstances, but only as applied under the facts and circumstances in a particular case." *Bruegger*, 773 N.W.2d at 880.

[11] If the reviewing court makes a preliminary determination that a sentence casts an impression of gross disproportionality, it will then go on to evaluate whether that impression is borne out by comparison to other sentences within the same state—an intrajurisdictional analysis—and to sentences for the same crime in other jurisdictions—an interjurisdictional analysis. *Bruegger*, 773 N.W.2d at 873. If the sentence does not pass the threshold of potentially grossly disproportionate, we need not undertake these additional analyses. *See id.*

(1983)). "[L]egislative determinations of punishment are entitled to great deference." *Id.* at 872–73.

Wright claims her seven-year mandatory minimum sentence is grossly disproportionate to her crime. In support of her claim, she notes the statutory provisions applicable to her case are extremely broad, which has caused her offense to be statutorily equated to more egregious offenses. The robbery provision of Iowa Code section 711.1, she claims, could apply to a shoplifter hurriedly pushing past a clerk or a team of bank robbers causing major physical injuries to tellers. The mandatory minimum provision of section 902.12, she notes, applies to severe offenses like second-degree murder, attempted murder, and vehicular homicide. The forcible felony provisions of sections 702.11 and 907.3, which make a term of imprisonment for Wright mandatory, put second-degree robbery in the same category as child endangerment, murder, and sexual abuse.

However, the breadth of these provisions does not render their application to Wright's case grossly disproportionate to her crime. To the contrary, the interplay of these provisions demonstrates our legislature's policy determination that perpetrators of second-degree robbery—and their aiders and abettors—are subject to harsh penalties to deter those who would consider engaging in such societally harmful behaviors. Further, our supreme court has acknowledged that mandatory minimums do not create grossly disproportionate sentences even for second-degree robbery. *State v. Phillips*, 610 N.W.2d 840, 843–44 (Iowa 2000).

Wright's lack of criminal history and her motivation for assisting her son in the crime—i.e. drug addiction—are not sufficient mitigating circumstances to

overcome the deference we give our legislature in crafting proper sentencing provisions. Wright has not persuaded us that her sentence should satisfy the threshold determination of gross disproportionality to warrant further analysis. *See Bruegger*, 773 N.W.2d at 873. We therefore affirm her sentence.

### IV. Conclusion

Our record is sufficient to determine whether Wright's counsel rendered ineffective assistance. It shows Wright's guilty plea was supported by a factual basis and was voluntarily made after Wright was given explicit notice of the elements of the crime. Her counsel did not breach an essential duty, and she is not entitled to relief under her ineffective-counsel claim.

Wright's ten-year sentence coupled with a seventy percent mandatory minimum is not grossly disproportionate to the crime of aiding and abetting second-degree robbery. The sentence is therefore not cruel and unusual punishment. We affirm the sentence.

**AFFIRMED.**